J-A18031-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.W.G., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| L.F., | : | |
| Appellee | : | No. 4084 EDA 2017 |

Appeal from the Order Entered November 14, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): 0C1601574

BEFORE:     STABILE, J., STEVENS, P.J.E.* and STRASSBURGER, J.**

MEMORANDUM BY STRASSBURGER, J.:                 **FILED OCTOBER 31, 2018**

D.W.G. (Father) appeals from the order entered November 14, 2017, which awarded shared legal and physical custody of Father's minor son, N.G. (Child), born in December 2015, to Father and Child's biological mother, L.F. (Mother), and denied Mother's relocation.  After review, we affirm.

> The parties, who have never been married, lived together in an apartment located in the Northeast section of Philadelphia for approximately one month before Mother gave birth to [Child] in December of 2015.  They continued to live together until mid-December of 2016, at which time Father moved out of the parties' shared residence and began to live with his parents who have a residence nearby in Philadelphia.[1]  On December 19, 2016, Mother left the parties' Philadelphia apartment with [Child] and moved to her parents' home in Greencastle, Franklin County, an approximate three-hour drive from Philadelphia.[2]  Mother testified that she left Philadelphia in December of 2016 due to arguments and fighting between the parties.  She moved to Greencastle where she grew up and where her parents, sister and brother-in-law live.  Other than [Child], Mother has no familial ties to

*Former Justice specially assigned to the Superior Court.

**Retired Senior Judge assigned to the Superior Court.

Philadelphia. Mother currently works full-time as an insurance agent in Hagerstown, Maryland.

_____

[1] Father testified that he stopped living at the parties' apartment on December 13, 2016, due to an incident between them which resulted in police intervention.

[2] Because Mother left Philadelphia with [Child] on December 19, 2016, Father spent neither [Child's] first birthday nor Christmas with [Child].

On December 21, 2016, Father filed a complaint for shared legal custody and primary physical custody of [Child]. On December 27, 2016, Father filed a petition for expedited relief.[3] On February 3, 2017, the [family court] held a hearing on the petition for expedited relief and entered a temporary custody order providing for shared legal custody and shared physical custody. Pursuant to the temporary custody order, physical custody was on a week[-]to[-]week basis with exchanges to take place at noon on Sundays at a designated police district in Philadelphia. If Mother remained in Philadelphia, the custody exchanges were to occur every two days and on alternate weekends. The non-custodial parent was entitled to have daily "facetime" contact with [Child] at 6:00 p.m. for ten minutes. The matter was directed to be rescheduled for a relocation hearing, along with Father's complaint.[4] (Father had already filed a counter-affidavit to Mother's relocation on February 2, 2017.)

_____

[3] On December 29, 2016, Mother sought and obtained a temporary protection from abuse order against Father. That order was vacated after a hearing on January 13, 2017.

[4] Mother filed a *pro se* petition to modify on May 8, 2017, which petition was heard by a Master in August of 2017, and scheduled for trial in April 2018. That trial was cancelled after the entry of the instant order on appeal, which addressed all then-pending custody pleadings.

Both parties appeared before the [family court] with their respective counsel for the custody/relocation hearing on November 14, 2017. At that time, Father was thirty-one (31) years old. He has a bachelor's of science degree in science and

- 2 -

psychology and he testified that he works for an agency providing services to adults with intellectual disabilities. His typical work schedule is Sunday, Monday, Friday, and Saturday, from 4:00 p.m. to 12:00 a.m. When Father is working, [Child] is with Father's parents, and they all continue to reside in the same residence. Father has two sisters, and they and their families live near Father and his parents.

During the summer of 2017, Father spent his days off, Tuesday, Wednesday, and Thursday, with [Child] and his extended family at their shore home in North Wildwood, New Jersey. The drive from Philadelphia to North Wildwood takes approximately one and a half hours. Father also took vacation time to spend with [Child] and his family at the New Jersey shore.

Regarding medical care for [Child], Father testified that [Child] is treated by physicians at Tri-County Pediatrics in Philadelphia. In May of 2017, Mother advised Father that she was switching [Child's] care to a pediatrician located in Waynesboro, Pennsylvania, approximately three hours from Philadelphia. Father objected to changing doctors because he alleged that a change would not be beneficial for [Child], and because Mother never gave Father information about the Waynesboro pediatrician. Father prefers for [Child] to be treated at an urgent care facility when [Child] is in Mother's care in Greencastle. Mother testified that she would like [Child] to have a pediatrician in both Philadelphia and Greencastle/Waynesboro.

Father testified that [Child] has no medical problems. However, Father testified that [Child] has had two ear infections over the past three to four months and hives in January 2017. In January of 2017, Mother took [Child] to St. Christopher's Hospital in Philadelphia without prior notice to Father in order to obtain a second opinion regarding the origin of the hives. Father stated that while [Child] has not yet begun to speak, he was advised by the [Child's] pediatrician that there was no cause for concern about speech until [Child] reached the age of three. Mother testified that she is concerned with the development of [Child's] speech.

Father testified that he planned for [Child] to start attending pre-school in September of 2018, on a part-time basis, on Mondays, Wednesdays, and Fridays. Two of the pre-schools Father had contacted advised him that [Child] would not be

- 3 -

eligible to attend either one in September 2018 since he would not yet be three years old. Father visited two other pre-school programs and he formed a preference for "Over the Rainbow" [school] for [Child] starting in September 2018 on a part-time basis, Mondays, Wednesdays, and Fridays. Father has not discussed the prospect of [Child's] going to pre-school with Mother. Mother testified that she did not think that [Child] had to go to pre-school and that she and Father had not yet discussed the matter. Mother does not consider it impossible for [Child] to attend either daycare or pre-school while he is in her custody and to attend [] pre-school while in Father's custody.

In anticipation of sending [Child] to kindergarten in Philadelphia, Father identified two schools, a charter school and the elementary school that [Father] and his siblings attended. Father and Mother have never discussed with each other where [Child] would go to school. Mother testified that she would want [Child] to go to an elementary school in Greencastle.

Father's preferred custodial arrangement would be for him to have primary physical custody with Mother having partial physical custody every other weekend. Father testified that the prospect of [Child] living primarily with Mother in Greencastle causes him to be afraid because he does not know what Mother would tell [Child] about him. Father stated, "It scares me a lot, as he gets older, what they're going to say about me, who I am, as a person and as a dad."

Mother's suggested custodial schedule would be for Father to have partial physical custody every Tuesday, Wednesday, [and] Thursday in Philadelphia. Mother would pick up [Child] on Friday and do all the driving for both drop off and pick up. The custody exchange would take place at a location approximately half way between Greencastle and Philadelphia, near exit 266 of the Pennsylvania Turnpike.

Trial Court Opinion (TCO), 4/19/2018, at 1-5 (citations to the record omitted).

Following the custody and relocation hearing, the family court issued an order awarding Father and Mother shared legal and physical custody of Child, and finding that "Mother ha[d] not met her burden in establishing that the

proposed relocation of [] Child from Philadelphia, PA to Greencastle, PA is in the best interest of [] Child." Order, 11/14/2017, at 1-2. The court ordered each parent to have shared physical custody of Child on an alternating weekly basis, with exchanges taking place on Tuesdays at 5:00 p.m. at a midpoint between the parties' locations. *Id.* at 1. The family court permitted Mother to exercise her physical custody in Greencastle, permitted the parents to use different pediatricians for Child in their respective locations, and set a holiday schedule. *Id.* at 2.

On December 14, 2017, Father filed a notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The family court issued its Rule 1925(a) opinion on April 19, 2018.

Father raises the following issues for our review.

1. Whether the [family] court erred as a matter of law by concluding that "Mother has not met her burden in establishing that the proposed relocation of [Child] from Philadelphia, PA to Greencastle, PA is in the best interest of [Child]" yet avoiding making a decision on the very claim at issue, relocation, by specifically stating, "I'm not doing it today, but eventually, either the living arrangements are going to change – the location, you're going to have another custody trial or you're going to make a resolution."

2. Whether the [family] court erred as a matter of law by concluding that "Mother has not met her burden in establishing that the proposed relocation of [Child] from Philadelphia, PA to Greencastle, PA is in the best interest of [Child]" yet specifically allowing each parent to utilize [his or her] own selected pediatrician during [his or her] weeks of physical custody such that the result is that [Child's] primary pediatrician will be located in Greencastle, PA during Mother's every other custody

weeks despite the [family court's] express disapproval of relocation.

3. Whether the [family] court erred as a matter of law by concluding that "Mother has not met her burden in establishing that the proposed relocation of [Child] from Philadelphia, PA to Greencastle, PA is in the best interest of [Child]" which conclusion clearly disapproved the proposed relocation yet allowed said relocation to occur as the [family] court established [Child] as a half[-]time resident of the disapproved geographical area by ordering that Mother could exercise her shared physical custody in Greencastle, PA and ordering that Father, the non-relocating party, be responsible for half of the transportation time of [Child] to Greencastle, PA.

Father's Brief at 12-13 (reordered and unnecessary capitalization omitted).

We address Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. We defer to the credibility determinations of the presiding trial judge, who viewed and assessed the witnesses first-hand. We, however are not bound by the trial court's deductions or inferences from its factual findings, and ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the trial court's conclusions only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*P.J.P. v. M.M.*, 185 A.3d 413, 417 (Pa. Super. 2018) (citations and internal quotation marks omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *Id.*, *quoting* *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa.

Super. 2014). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

When a party seeks to relocate, he or she bears the burden of proving that relocation will serve the best interests of the child, as determined by a consideration of the following factors. 23 Pa.C.S. § 5337(h), (i)(1).

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

In this case, with both relocation and custody at issue, consideration of both sets of factors was required. *A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013) ("The trial court must consider all ten relocation factors and all sixteen custody factors when making a decision on relocation that also

involves a custody decision."). "[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court, which] has had the opportunity to observe the proceedings and demeanor of the witnesses. ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (citation and quotation marks omitted).

After considering the custody and relocation factors, the family court determined it was in Child's best interest to award Mother and Father shared legal custody, and to award them shared physical custody on an alternating weekly basis. TCO, 4/19/2018, at 6-11. The court further concluded that Mother had not met her burden to establish that the proposed relocation of Child from Philadelphia to Greencastle was in Child's best interest. ***Id.*** With respect to shared physical custody, the court set forth the day, time, and location of exchanges, and permitted Mother to exercise her physical custody of Child in Greencastle. ***Id.*** at 11.

On appeal, the crux of Father's arguments is that the family court's award of shared physical custody, which allows Mother to exercise her physical custody in Greencastle, amounts essentially to a *de facto* relocation by Mother to Greencastle. Father's Brief at 26-27. Specifically, Father claims the family court abused its discretion when it ordered a custody schedule that will need to be revisited when Child is of school age, permitted the parents to use different pediatricians for Child in their respective locations, and required

Father to be responsible for half of the transportation for custody exchanges. *Id.* at 19-32.

We address these claims together as they all relate to Father's contention that the family court allowed a *de facto* relocation to occur. With respect to the school issue, the family court addressed Father's claims as follows.

> Father fails to identify how the maintenance of continued shared physical custody does not serve the best interests of [Child]. Father's objections articulated at the hearing to shared physical custody are for the most part anticipatory of the time that [Child] would begin either pre-school or kindergarten, or both.
>
> As stated by Father in response to Mother's counsel's question regarding his objection to shared physical custody:
>
>> Well, I think the sooner we – I think, with preschool soon to come up, and then eventually, in a couple of years, it'll be kindergarten, I think the sooner we can establish him – some grounds for stability for our son [] and get him transitioned into the new routine, it might benefit him more than back and forth to Greencastle on the weekends.
>
> N.T.[, 11/14/2017,] at 91.
>
> Responding to his own counsel's question regarding his objection to shared physical custody if Mother remains in Greencastle, Father stated:
>
>> Because for [Child], when pre[-]school, kindergarten and elementary school come along, it just wouldn't be – there's no way that he could attend school for a week down here in Philadelphia, as well as a week up in Greencastle.
>>
>> So once he is enrolled here – when he's enrolled here, it just provides more stability and more routine and it's just to his benefit because, obviously, you can't –

you can't be in school in two different places, so, an adjustment would have to be made for that.

N.T.[, 11/14/2017,] at 105-06.

The [family court] rejected Father's preference primarily because it was based upon concerns about the <u>future</u> and not based upon current circumstances. Certainly, as [Child] goes from being a toddler to an older child, the arrangements regarding physical custody may require modification of the [family court] order to accommodate [Child']s educational needs. That in no way demonstrates that [the family court's] order is not currently in the best interest of [Child] during a time in his young life that he is not even eligible to attend preschool. Rather, for a child just over the age of two, [Child's] best interests are served by sustained weekly contact with each of his loving parents. Father's focus upon inevitable changes that will occur in the future is misplaced as the [family court] is bound to look at the situation as it currently exists.

Father's emphasis upon pre-school [] fails to take into account Mother's role in the decision as to whether [Child] should attend pre-school. Father testified that he had not discussed the prospect of [Child's] going to pre-school with Mother, and she testified that she had not come to any conclusion [Child] would go to pre-school and that the issue had not been discussed between the parties. Additionally, Father's proposed part-time pre-school schedule is accommodated by the order during the weeks that Father has custody. Since Father has physical custody on Wednesdays, Fridays, and Mondays every other week, [Child] would be able to attend pre-school on the precise days that Father anticipates sending [Child] to pre-school. There is no evidence that [Child] would be barred from attending a pre-school where his attendance would be on an every other week basis rather than every week.

TCO, 4/19/2018, at 13-15 (emphasis in original).

In addressing Father's next claim relating to pediatricians, the family

court concluded that

Father's contention that [Child] should not have a pediatrician in both Philadelphia and Greencastle [] does not serve [Child's] best

- 12 -

interests. The [family court] discerns no principled basis upon which Father bases his preference for [Child's] going to the pediatric practice of Father's choice in Philadelphia and visits to an urgent care facility in Greencastle. [Child's] best interest is served by having an established relationship with a health care provider in each of the locations in which [Child] will be spending half of his time.

*Id.* at 15.

And finally, the family court addressed Father's last claim relating to transportation by stating

Father's objection [] to his sharing the transportation of [Child] to a mid-way exchange location between Greencastle and Philadelphia is based upon Father's own convenience. He does not explain how [Child's] interests would be better served riding the entire three-hour trip between Greencastle and Philadelphia with Mother rather than splitting the trip by riding an hour and a half with each parent. The [family court] determined that Father would not bear an undue burden in driving once a week on one of his three days off for the hour and a half each way to the Manheim, Pennsylvania exchange point. Father routinely drove an equivalent distance from his home in Philadelphia to North Wildwood, New Jersey to spend time at the shore with [Child] and his family during the summer months.

*Id.* at 15.

Considering our standard of review and the great deference it affords to the family court, we find no error in the court's conclusions. Our review of the record reveals the court adequately considered the statutory factors and Father's claims, and set forth its reasoning, supported by the record, for awarding shared legal and physical custody. While recognizing that the custody order will likely need to be modified when Child is of school-age, the family court analyzed correctly Child's best interest at the time of the hearing.

That the parties may need to modify the custody order in the future does not amount to an abuse of discretion by the family court. Once a custody order is in place, a court may modify it on petition "to serve the best interest of the child." 23 Pa.C.S. § 5338(a). Further, we find no error in the family court's determination relating to Child's pediatricians. Because Child's time is split equally between the two locations and it provides continuity of care, it was within the family court's discretion to determine that establishing a relationship with a pediatrician in each place serves Child's best interest. We likewise find no abuse of discretion in the family court's order that the parents meet at a midpoint between their locations for custody exchanges. Father has not shown that such an arrangement is unduly burdensome for him, and in fact, at the time of the hearing, the parties had already been doing just that for several months.

Despite Father's protestations concerning Mother exercising her physical custody in Greencastle, the family court, presiding over the trial and reviewing all the testimony and evidence, found "for a child just over the age of two, [Child's] best interests are served by sustained weekly contact with each of his loving parents." *Id.* at 14. The family court determined that both parents are capable of handling parental duties and maintaining a relationship with Child to support his emotional needs; both parents offer stability and continuity, are engaged in activities with Child, and have families available to care for Child while they are working. *Id.* at 6-9. It found Child is well-taken

care of by both parents. *Id.* at 7. The family court was clearly aware that both parents are loving, have supportive families, and maintain beneficial relationships between Child and their extended families, and thus, determined it is in Child's best interests to spend equal amounts of time with each parent. Recognizing how difficult these custodial decisions are for family courts when dealing with two loving and caring parents, we find that the court did not abuse its discretion in allowing Mother to exercise her shared physical custody in Greencastle.

For the foregoing reasons, we conclude that the family court did not abuse its discretion when it analyzed the factors set forth at 23 Pa.C.S. §§ 5328 and 5337 to deny Mother's proposed relocation and to award the parties shared legal and physical custody of Child to serve Child's best interests. Because we find no abuse of discretion and conclude that none of Father's claims entitles him to relief, we affirm the order of the family court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/18

- 15 -