J-A04002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.C.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| G.S.L. | : | No. 2733 EDA 2018 |

Appeal from the Order Entered August 21, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  No. 0C1213057

BEFORE:  LAZARUS, J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 22, 2019**

C.C.L. (Mother) appeals from the order, entered in the Court of Common Pleas of Philadelphia County, granting Mother and G.S.L. (Father) shared legal custody and shared physical custody of P.R.L. (Child) (DOB-1/5/12).  After our review, we affirm based on the September 25, 2018 opinion authored by the Honorable Ourania Papademetriou, which incorporated the court's earlier memorandum of August 21, 2018.

C.C.L. and G.S.L. were married in 2010, and they divorced in 2016.  In October 2015, the parties executed a post-nuptial agreement, which was incorporated into the divorce decree.  That agreement provided for shared legal and equally shared physical custody of Child.  Thereafter, on November

_____
*Retired Senior Judge assigned to the Superior Court.

23, 2016, the parties entered into a detailed temporary custody order.[1] Subsequently, Mother and Father each filed custody complaints. The court held a two-day custody hearing on August 8-9, 2018 and issued findings of fact and conclusions of law related to the custody factors set forth in 23 Pa.C.S.A. § 5328(a). *See* Memorandum, 8/21/18. On August 21, 2018, the court entered a final custody order, providing, *inter alia*, that the parties continue equally shared physical custody and shared legal custody of Child. Mother appealed. Both Mother and the trial court have complied with Pa.R.A.P. 1925. Mother raises six issues for our review:

1. Did the trial court err in failing to create a full and complete record in order to fully address Child's best interests?

2. Did the trial court err in failing to address and give appropriate weight to the testimony of Father and Father's girlfriend [L.K.][2] evidencing contempt and disrespect for Mother?

3. Did the trial court err in failing to address and give appropriate weight to the testimony and evidence presented of Father's inability and refusal to co-parent with Mother?

4. Did the trial court err by failing to consider Child's emotional wellbeing?

5. Did the trial court err in failing to consider the impact of the new custody schedule on Child's relationship with her only sibling?

_____

[1] That order, filed on November 29, 2016, provided for shared legal custody and a schedule of equally shared physical custody for the two weeks beginning November 28, 2016.

[2] Subsequent to the hearing in this case, Father and L.K. ended their relationship. *See* Appellee's Brief, at 7 n.1.

6. Did the trial court err in failing to place restrictions on Father's travel?

Appellant's Brief, at 16-17.

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004). Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321–5340. Trial courts are required to consider "[**a**]ll of the factors listed in section 5328(a) . . . when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).[3]

---

[3] **(a) Factors**.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Our scope and standard of review of child custody orders are well settled:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

First, we note that in four of her claims, issues 2, 3, 4 and 5, Mother is essentially asking this Court to reweigh the evidence. These arguments challenge the trial court's credibility determinations, and would require this Court to reassess and reweigh the evidence in Mother's favor. It is well established that we cannot disturb the trial court's credibility determinations or reweigh the evidence. *See E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011) (stating, "with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand"); *see also Robinson v. Robinson*, 645 A.2d 836, 838 (Pa. 1994) (stating that on issues of credibility and weight of evidence with regard to custody orders, "appellate courts must defer to the findings of the trial judge who has had the opportunity to observe the

proceedings and the demeanor of the witnesses."). A review of the record reveals that the trial court's findings of fact and conclusions of law are thoroughly supported by the ample evidence and testimony of record. **See C.R.F.**, 45 A.3d at 443 (stating this Court cannot reweigh evidence supporting trial court's determinations as long as there is evidence to support conclusions).

Mother argues that she was "restricted" in presenting her case because the court placed time constraints on the parties and spent the larger portion of her brief on that issue. However, the court allowed two days for the hearing, both parties presented multiple witnesses, and Mother presented 60 exhibits. Moreover, at the hearing, Mother did not seek additional time. Further, contrary to her current position, at the time of the hearing Mother agreed that it was not necessary for Child to be interviewed by the court. We disagree with Mother's characterizations; the court neither restricted the parties nor failed to create a complete record. The trial court recognized the conflict between the parties and took notice of the fact that their post-nuptial agreement indicated that they both understood they needed to work together for Child's best interest.

In her final issue, Mother objects to the fact that the trial court did not restrict Father's travel. Again, Mother is simply not satisfied with the decision the trial court made. The court specifically determined that it did not consider Father a flight risk, given his extensive ties to Philadelphia and that both Mother and Father testified that they believed travel to be beneficial to Child.

Further, the trial court comprehensively addressed the issue of travel in her Rule 1925(a) opinion, at pages 12-13, and we find no abuse of discretion.

After our review, we conclude the record fully supports the court's determination. Therefore, we conclude that the trial court did not abuse its discretion and we defer to its custody decision. **C.R.F.**, **supra**. We affirm the custody order on the basis of the trial court's opinion, and we direct the parties to attach copies of the court's opinion and memorandum in the event of further proceedings.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/19

Filed 10/10/2018 3:28:13 PM Superior Court Eastern District
2733 EDA 2018

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
FAMILY COURT DIVISION

C.C.L.,
Plaintiff/Appellant

v.

G.L.,
Defendant/Appellee

: Docket No. OC1213057
:
:
:
:
:
:
:
: Superior Court of Pennsylvania
:
: Docket No. ___ EDA 2018

OPINION by Papademetriou, J.
September 25, 2018

This is an appeal from the order entered on August 21, 2018, in this custody matter regarding the parties' daughter, P.L., (Child") who was born on January 5, 2012. The court conducted a two-day evidentiary hearing on August 8 and 9, 2018. On August 21, 2018, the court issued an order resolving all claims. The court considered the testimony of Appellant ("Mother"), Appellee ("Father"), and other witnesses. The court evaluated the credibility and demeanor of all witnesses, reviewed and considered the documents admitted into evidence by each party, and evaluated all the factors in 23 Pa.C.S. § 5328(a). The court awarded shared legal custody and shared physical custody. Mother filed a notice of appeal and a concise statement of errors complained of on appeal on September 19, 2018. For the reasons stated herein, the order of August 21, 2018 should be affirmed.

1

A. Custody Factors.

As explained in its Memorandum Opinion, filed August 21, 2018, in making the award of shared legal custody and shared physical custody, the court considered the factors set forth at 23 Pa.C.S. § 5328(a), giving weighted consideration to those which affect Child's safety. Reordered for clarity, the factors were considered as follows:

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

The Court determines that there is a high level of conflict between the parties. They do not communicate well and engage in email exchanges which often express disrespect for one another. Father at various times has instructed Mother to only communicate with him through his legal counsel and has instructed Mother not to communicate at all with his girlfriend, [L.K.], to whom he is pre-engaged and with whom he shares a residence. There have been frequent conflicts over the timeliness of the provision of travel information. There have been frequent conflicts over the whereabouts of Child while she is in the other parent's custody. There have been conflicts over Child's participation in sleepovers and Child's communicating on a daily basis with the non-custodial parent and other persons in that parent's company.

Notwithstanding the high level of conflict between the parties, they have been able to work together in Child's best interest, such as choice of her school and medical treatment. The Court determines that the likelihood of conflict between the parties has been reduced by its order of August 21, 2018, in which the Court has addressed and resolved the primary areas of conflict between the parties, including international travel,

2

communication with the non-custodial parent, and scheduling of Child's extracurricular activities.

As recognized by the parties in their postnuptial agreement of October 13, 2015 ("PNA"), they each "agree that they possess the ability to communicate and cooperate with each other in promoting [Child's] best interests." PNA at ¶ 12.7. The avenue of communication between the parties has now been limited to use of Our Family Wizard, with the exception of an emergency situation. To the extent that the ability to cooperate has diminished in the past several years, the Court expects that the level of conflict between the parties will greatly lessen as they and Child acclimate themselves to the schedules and provisions of the August 21st order.

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

This factor favors neither party. Both parties permit Child to communicate with the non-custodial parent, although Father has been somewhat more restrictive than Mother. As recognized by the parties in their postnuptial agreement, they each "realize that it is critical for [Child's] healthy development that she feel good about and loving towards both parents, and that both parents play a major role in the achievement of this goal." PNA at ¶ 12.15.

(3) The parental duties performed by each party on behalf of the child.

Both parties have performed all parental duties while Child has been in their respective custody.

(4) The need for stability and continuity in the child's education, family life and community life.

3

Father remains living in the same Center City Philadelphia neighborhood that he, Mother, and Child lived in when the family was intact. Child continues to attend the school located several blocks from Father's current residence in a large apartment building. Mother has recently purchased a home in the East Oak Lane section of Philadelphia in which she, Child, and Child's half-sister reside when Mother has custody of each girl. Mother and Child have forged ties in the new community, and the home is conducive to enhanced family life given its large size and ample outdoor space.

(5) The availability of extended family.

Father's extended family lives in India. The parents of [L.K.] live in the Fishtown section of Philadelphia and have established a relationship with Child.

Mother's parents live in New York State, and she has siblings who live in various states with their children. Mother and Child often visit Mother's family.

(6) The child's sibling relationships.

Child has a half-sister, Mother's daughter, who is currently 14 years old, eight years older than Child. They have a close relationship and live together when Mother has custody of both of them at the same time.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

Child was not interviewed, and the Court makes no determination regarding Child's preference.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

As recognized by the parties in their postnuptial agreement, neither parent should "say or do anything in front of or to [Child] that would in any way denigrate the other

4

parent." PNA at ¶ 12.14. To the extent that this prohibition has been eroded in the past several years, the Court expects that the parties will conform their behavior to this fundamental tenet as they and Child acclimate themselves to the provisions of the August 21st order.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

This factor favors neither party. As recognized by the parties in their postnuptial agreement, they each "agree that [Child] perceives both parents as sources of love and security and wishes to continue both relationships." PNA at ¶ 12.6. To the extent that this sense of agreement has diminished in the past several years, the Court expects that the parties will develop a greater appreciation of Child's emotional needs as they and Child acclimate themselves to the schedules and provisions of the August 21st order.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

This factor favors neither party. Each party has attended to Child's daily physical, emotional, developmental, educational and special needs while Child has been in each party's respective custody.

(11) The proximity of the residences of the parties.

The parties currently live approximately 25 to 40 minutes driving distance apart.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

Each party is available to care for Child and has the ability to make appropriate child-care arrangements. Father is self-employed in the real estate business and Mother is a self-employed interior designer.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

5

Mother has a history of alcohol abuse. She attended an in-patient rehabilitation facility in February 2017 for three weeks. She testified that she has maintained sobriety since leaving the facility. Father's proposal of shared physical custody supports the conclusion that Mother's history of alcohol abuse does not interfere with her current ability to perform her parental duties.

(15) The mental and physical condition of a party or member of a party's household.

Neither party or member of a party's household has a mental or physical condition that is other than normal.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

Not applicable.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

Not applicable.

(16) Any other relevant factor.

International and domestic travel. Father seeks to travel to India with Child to spend time with her family there. Father's mother is elderly and precluded from traveling due to infirmity. In addition, Father frequently travels domestically during his custodial periods with Child. The August 21, 2018 order addresses the obligation of the travelling party to provide travel itinerary information to the other party. The Court does not consider Father a flight risk given the extensive ties he has to Philadelphia.

Composition of Father's household. Since the summer of 2018, Father's household has included [L.K.]. Child has a positive relationship with L.K.].

6

## B. Appellant's Statement of Errors Complained of on Appeal.

1. Pursuant to well established case law [citations omitted], the trial court had an obligation to create a full and complete record. The Court erred by failing to compile a full and complete record and, in fact, by acting affirmatively in a manner to limit the record. The Court did so by setting time constraints on the trial, requiring Mother to reduce her witnesses, directing her to shorten her cross-examinations, denying her use of certain documentary evidence, and failing to interview the child.

2. The Court erred by failing to consider or give weight to the testimony of Father and [L.K.] (Father's girlfriend) which unequivocally showed both individuals' contempt for and lack of respect for Mother.

3. The Court erred by failing to consider giving weight to the testimony or the evidence presented which identified Father's inability and refusal to co-parent with Mother.

4. The Court erred by failing to give weight to the testimony that child is experiencing emotional trauma as she is transferred between the parents' two incredibly different households and as Father insists on speaking inappropriately to the child including, but not limited to, speaking derogatively about Mother and speaking to the child about the child about the litigation and other adult issues.

5. The Court erred by failing to consider the impact that this custody schedule would have on the Child's relationship with her sister. The new custody schedule, as written, would reduce their time together from fourteen (14) days per twenty eight (28) day period down to four (4) days per twenty eight (28) day period.

6. The Court erred by failing to place restrictions on Father's travel as the evidence and testimony showed Father consistently failed to provide travel information or a reliable method of communication to Mother during previous travels, the child will not benefit from regular weekend travel and, in fact, suffer from that travel, and the child will be harmed by missing school as she is enrolled in an intensive Spanish immersion school.

7. The Court erred in its Order by not identifying when the summer schedule and school year schedules were to begin.

8. The Court erred in finding that the transitions were problematic for the child as no testimony or evidence were presented at trial in this regard other than a statement made by Father counsel on closing.

## C. Discussion.

1. Mother's complaint that the court erred by failing to compile a full and complete record and, by acting affirmatively in a manner to limit the record is without merit. The

7

matter was assigned as a protracted case by Administrative Judge Margaret Murphy to the undersigned judge by order dated January 24, 2018. Judge Murphy's order directed that the case be scheduled for a two-day protracted hearing. At no time prior to the commencement of the hearing on August 8, 2018, did Mother move for additional time. Mother, therefore, has waived any challenge to the amount of time and court resources allotted to this matter. See Bednarek v. Velazquez., 830 A.2d 1267, 1270 (Pa.Super. 2003) (holding that acquiescence to a procedure employed by the trial court results in waiver of any challenge to that procedure on appeal). As directed by Judge Murphy, the court provided the parties two full days within which to present their cases.

At the beginning of the first day of the hearing, counsel for Mother informed the court that the witnesses would include Mother, Mother's former husband, Mother's daughter E., a nanny, and Child. Shortly thereafter, counsel for Mother advised that she had chosen not to call the nanny. At the end of the first day of testimony, counsel for Mother told the court she did not care if the court talks to Child and that, "We have no problem with the court not meeting with [Child]." At the beginning of the second day of trial, counsel for Mother stated that is was not necessary for Child to be called. Further, Mother testified that she did not want to put Child through the experience of talking to the court. On this basis, it is clear that the court did not err in not interviewing Child and that Mother did not seek for Child to be interviewed. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302; Willoughby v. Willoughby, 862 A.2d 654, 659 (Pa.Super. 2004); In the Interest of J.Y., 754 A.2d 5 (Pa.Super. 2000); Weir v. Weir, 631 A.2d 650 (Pa.Super. 1993).

8

The remainder of this allegation of error lacks the necessary conciseness which would enable the court to address its merits. The Pa.R.A.P.1925(b) statement must be sufficiently "concise" and "coherent" such that the trial court judge may be able to identify the issues to be raised on appeal. Jiricko v. Geico Ins. Co., 947 A.2d 206, 210 (Pa.Super. 2008). The reviewing court may find waiver where a Rule 1925(b) Statement is too vague. In re A.B., 63 A.3d 345, 350 (Pa.Super. 2013). Mother has not identified instances which support her vague allegation that the court required Mother to reduce her witnesses, directed her to shorten her cross-examinations, or denied her use of certain documentary evidence.

2. Mother's complaint that the court erred by failing to consider or give weight to the testimony of Father and [L.K.] (Father's girlfriend) which unequivocally showed both individuals' contempt for and lack of respect for Mother is not supported by the record. The court recognized the high level of conflict between the parties and cited that Father at various times has instructed Mother to only communicate with him through his legal counsel and has instructed Mother not to communicate at all with L.K.. The court heard and considered Father's and L.K.'s testimony regarding their shared negative opinions of Mother, and afforded this testimony the weight it considered appropriate pursuant to the statutory custody factors. "The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child." Robinson v. Robinson, 538 Pa. 52, 645 A.2d 836, 838 (Pa. 1994); A.V. v. S.T., 87 A.3d 818, 820 (Pa.Super. 2014); S.M. v. J.M., 811 A.2d 621, 623 (Pa.Super. 2002).

9

Further, the record includes Mother's proposed custody order, Exhibit "M-59," which provided for shared legal custody of Child, for Father to have partial physical custody on alternating weekends and alternating Wednesdays, and for a vacation and holiday schedule to be shared by both parties. Mother's proposed order anticipates substantial, ongoing contact and communication between the parties and Child despite the purported "contempt for and lack of respect for Mother." Short of granting Mother sole legal and sole physical custody, an award that was not propounded by Mother herself, the court's ability to shield Child from negative feelings harbored by Father and L.K. is limited by the realities of either shared or primary/partial custody arrangements. Mother's concerns were addressed by the court in its Memorandum Opinion wherein the court observed that the parties recognized in their postnuptial agreement that neither parent should "say or do anything in front of or to [Child] that would in any way denigrate the other parent." Postnuptial Agreement at ¶ 12.14.

3. Mother's complaint that the court erred by failing to consider giving weight to the testimony or the evidence presented which identified Father' inability and refusal to co-parent with Mother is without merit. Again, the court recognized the high level of conflict between the parties and cited the frequent conflicts over the timeliness of the provision of travel information, the whereabouts of Child while she is in the other parent's custody, Child's participation in sleepovers, and Child's communicating on a daily basis with the non-custodial parent and other persons in that parent's company. The weight to be afforded to the evidence of Father's "inability and refusal" to co-parent is within the discretion of the court. "The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest

10

of the child." Robinson v. Robinson, 538 Pa. 52, 645 A.2d 836, 838 (Pa. 1994); A.V. v. S.T., 87 A.3d 818, 820 (Pa.Super. 2014); S.M. v. J.M., 811 A.2d 621, 623 (Pa.Super. 2002).

4. Mother's complaint that the court erred by failing to give weight to the testimony that Child is experiencing emotional trauma "as she is transferred between the parents' two incredibly different households and as Father insists on speaking inappropriately to the child including, but not limited to, speaking derogatively about Mother and speaking to the child about the litigation and other adult issues" is without merit. The August 21, 2018 order directed that "[n]either party shall communicate with Child regarding any litigation involving Child or topics which are in dispute between the parties." See Order, 8/21/18, at 4, Communication. Mother's concerns were further addressed by the court in its Memorandum Opinion wherein the court observed that the parties recognized in their postnuptial agreement that neither parent should "say or do anything in front of or to [Child] that would in any way denigrate the other parent." Postnuptial Agreement at ¶ 12.14.

As previously noted, the record includes Mother's proposed custody order, Exhibit "M-59," which provided for shared legal custody of Child, for Father to have partial physical custody on alternating weekends and alternating Wednesdays, and for a vacation and holiday schedule to be shared by both parties. Mother's proposed order anticipates substantial, ongoing contact and communication between the parties and Child, despite Father's purported speaking inappropriately to Child, including, speaking derogatively about Mother and speaking to Child about the litigation and other adult issues. Short of granting Mother sole legal and sole physical custody, an award that was

11

not propounded by Mother herself, the court's ability to shield Child from the trauma of living in two separate households is limited by the realities of either shared or primary/partial custody arrangements. Further, the court addressed Child's emotional needs by directing that she attend counselling sessions with an identified doctor and that the parties shall follow that doctor's recommendations. See Order, 8/21/18, at 10, Counseling for Child.

5. Mother's complaint that the court erred in failing to consider the impact of the new custody schedule upon Child's relationship with her half-sister is without merit. The record includes Court Exhibit "1," a document created jointly by counsel for Mother and counsel for Father at the bar of the court after the conclusion of the parties' cases, which addressed the periods of time that Mother would have with both Child and her half-sister. Counsel for Mother raised no objection to the accuracy of the information contained in Court Exhibit "1." Mother may not challenge the court's reliance upon this exhibit for the first time on appeal. Pa.R.A.P. 302; Willoughby v. Willoughby, 862 A.2d 654, 659 (Pa.Super. 2004); In the Interest of J.Y., 754 A.2d 5 (Pa.Super. 2000); Weir v. Weir, 631 A.2d 650 (Pa.Super. 1993).

Further, the court considered Child's sibling relationship with her half-sister in its application of the statutory factors. Mother's challenge is to the weight placed upon this factor, and, as such, it provides no basis for relief on appeal. See Robinson v. Robinson, 538 Pa. 52, 645 A.2d 836, 838 (Pa. 1994); A.V. v. S.T., 87 A.3d 818, 820 (Pa.Super. 2014); S.M. v. J.M., 811 A.2d 621, 623 (Pa.Super. 2002).

6. Mother's complaint that the court failed to place restrictions upon Father's travel with Child is without merit. The August 21, 2018 order directs that Child "shall attend all

12

classes and activities pursuant to the schedule established by the school" with the exclusion of a trip in November, 2018 and such other times as the parties may agree. See Order, 8/21/18, at 1, School Year. The order further provides that Father "shall seek the agreement of Child's school" for Child to take the two-week trip to India in November, 2018 and that Father "shall follow the school's direction in this regard." See Order, 8/21/18, at 2, Travel.

Regarding all other periods of travel, the order provides that the "party traveling overnight with Child shall provide the other party with the telephone number and address where the Child will be staying, as well as a travel itinerary (including flight numbers) no less than twenty-four (24) hours in advance of any scheduled travel." See Order, 8/21/18, at 2, Travel. Both Mother and Father testified that they believed travel to be beneficial. The court did not abuse its discretion in not placing greater restrictions upon either party's ability to travel with Child during that party's custodial period.

7. Mother's complaint that the court erred by not identifying "when the summer schedule and school year schedules were to begin" warrants no relief. The "school year" begins with the first day of school. The summer schedule begins on the day after the last day of school. The court considers these time frames to be implicit in its directing that Child "shall attend all classes and activities pursuant to the schedule established by the school...". See Order, 8/21/18, at 1, School Year.

8. Mother's complaint that the court erred in finding that transitions were problematic is without merit. Mother testified that Child had a "tough time" transitioning back and forth. The record lends no support for this contention of error.

13

D. Conclusion.

Mother's errors complained of on appeal provide no basis upon which to conclude that the court abused its discretion in making its award of shared legal custody and shared physical custody. Mother's contentions either misstate/lack support in the record or challenge the weight the court placed on the evidence it received and considered. Two of Mother's issues are internally inconsistent, items 4 and 8. Allegation of Error No. 4 alleges failure to credit testimony regarding Child's emotional reaction to being transferred between households, while Allegation of Error No. 8 argues that there was no evidence that transitions were problematic for Child. The court applied the proper standard in assessing Child's best interests in continuing to share her life with each parent. See A.D. v. M.A.B., 989 A.2d 32, 35-36 (Pa.Super. 2010) ("With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.").

The order of August 21, 2018 should be affirmed.

BY THE COURT:

_Ourania Papademetriou_
Ourania Papademetriou, J

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

SEP 2 5 2018

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:_____

14

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
FAMILY COURT DIVISION

C??????? C?? ?????? L??? ?????                          : Docket No. OC1213057
Plaintiff/Appellee                                     :
                                                       : In Custody
                                                       :
V.                                                     :
                                                       :
G??? ?????? S. L??????? \,                             :
Defendant/Appellant                                    :

## MEMORANDUM OPINION

The Court conducted a two-day evidentiary hearing concerning the custody issues relating to the parties minor daughter (born January ., 2012), on August 8 and 9, 2018. On August 21, 2018, the Court issued an order resolving all claims. The Court considered the testimony of Mother, Father, and other witnesses. The Court evaluated the credibility and demeanor of all witnesses, reviewed and considered the documents admitted into evidence by each party, and evaluated all the factors in 23 Pa.C.S. § 5328(a).

The Court awarded shared legal custody. Legal custody is the right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions. 23 Pa.C.S. § 5322. Shared legal custody is the right of more than one individual to legal custody of the child. 23 Pa.C.S. § 5322.

The concept of shared legal custody does not contain the principle of giving one parent final authority in the event of a dispute. M.P. v. M.P., 54 A.3d 950, 953 (Pa.Super. 2013) (quoting Hill v. Hill, 619 A.2d 1086, 1089 (Pa.Super. 1993) (disapproved on other grounds in P.J.P. v. M.M., 185 A.3d 413, 419 n.3 (Pa.Super. 2018)).

1

Prior case law[1] set forth a four factor analysis regarding shared legal custody. However, the enactment of Section 5328(a) rendered the Wiseman v. Wall, 718 A.2d 844 (Pa.Super. 1998) analysis obsolete. P.J.P. v. M.M., 185 A.3d 413, 420 (Pa.Super. 2018). The four factors are assimilated into Section 5328(a), and poor cooperation need not be dispositive. Id.

The Court awarded shared physical custody. Shared physical custody is the right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child. 23 Pa.C.S. § 5322.

In making its award of shared legal custody and shared physical custody, the Court has considered the factors set forth at 23 Pa.C.S. § 5328(a), giving weighted consideration to those which affect Child's safety. Section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal. C.B. v. J.B., 65 A.3d 950, 955 (Pa.Super. 2013). There is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. M.J.M v. M.L.G., 63 A.3d 331, 336 (Pa.Super. 2013).

Reordered for clarity, the factors are considered as follows:

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

The Court determines that there is a high level of conflict between the parties. They do not communicate well and engage in email exchanges which often express disrespect for one another. Father at various times has instructed Mother to only

---

[1] Wiseman v. Wall, 718 A.2d 844, 848 (Pa.Super. 1998).

2

communicate with him through his legal counsel and has instructed Mother not to communicate at all with his girlfriend, L:.. : K .:., to whom he is pre-engaged and with whom he shares a residence. There have been frequent conflicts over the timeliness of the provision of travel information. There have been frequent conflicts over the whereabouts of Child while she is in the other parent's custody. There have been conflicts over Child's participation in sleepovers and Child's communicating on a daily basis with the non-custodial parent and other persons in that parent's company.

Notwithstanding the high level of conflict between the parties, they have been able to work together in Child's best interest, such as choice of her school and medical treatment. The Court determines that the likelihood of conflict between the parties has been reduced by its order of August 21, 2018, in which the Court has addressed and resolved the primary areas of conflict between the parties, including international travel, communication with the non-custodial parent, and scheduling of Child's extracurricular activities.

As recognized by the parties in their postnuptial agreement of October 13, 2015 ("PNA"), they each "agree that they possess the ability to communicate and cooperate with each other in promoting [Child's] best interests." PNA at ¶ 12.7. The avenue of communication between the parties has now been limited to use of Our Family Wizard, with the exception of an emergency situation. To the extent that the ability to cooperate has diminished in the past several years, the Court expects that the level of conflict between the parties will greatly lessen as they and Child acclimate themselves to the schedules and provisions of the August 21st order.

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

3

This factor favors neither party. Both parties permit Child to communicate with the non-custodial parent, although Father has been somewhat more restrictive than Mother. As recognized by the parties in their postnuptial agreement, they each "realize that it is critical for [Child's] healthy development that she feel good about and loving towards both parents, and that both parents play a major role in the achievement of this goal." PNA at ¶ 12.15.

(3) The parental duties performed by each party on behalf of the child.

Both parties have performed all parental duties while Child has been in their respective custody.

(4) The need for stability and continuity in the child's education, family life and community life.

Father remains living in the same Center City Philadelphia neighborhood that he, Mother, and Child lived in when the family was intact. Child continues to attend the school located several blocks from Father's current residence in a large apartment building. Mother has recently purchased a home in the East Oak Lane section of Philadelphia in which she, Child, and Child's half-sister reside when Mother has custody of each girl. Mother and Child have forged ties in the new community, and the home is conducive to enhanced family life given its large size and ample outdoor space.

(5) The availability of extended family.

Father's extended family lives in India. The parents of L... ... K...... live in the Fishtown section of Philadelphia and have established a relationship with Child.

Mother's parents live in New York State, and she has siblings who live in various states with their children. Mother and Child often visit Mother's family.

4

(6) The child's sibling relationships.

Child has a half-sister, Mother's daughter, who is currently 14 years old, eight years older than Child. They have a close relationship and live together when Mother has custody of both of them at the same time.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

Child was not interviewed, and the Court makes no determination regarding Child's preference.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

As recognized by the parties in their postnuptial agreement, neither parent should "say or do anything in front of or to [Child] that would in any way denigrate the other parent." PNA at ¶ 12.14. To the extent that this prohibition has been eroded in the past several years, the Court expects that the parties will conform their behavior to this fundamental tenet as they and Child acclimate themselves to the provisions of the August 21st order.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

This factor favors neither party. As recognized by the parties in their postnuptial agreement, they each "agree that [Child] perceives both parents as sources of love and security and wishes to continue both relationships." PNA at ¶ 12.6. To the extent that this sense of agreement has diminished in the past several years, the Court expects that the parties will develop a greater appreciation of Child's emotional needs as they and Child acclimate themselves to the schedules and provisions of the August 21st order.

5

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

This factor favors neither party. Each party has attended to Child's daily physical, emotional, developmental, educational and special needs while Child has been in each party's respective custody.

(11) The proximity of the residences of the parties.

The parties currently live approximately 25 to 40 minutes driving distance apart.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

Each party is available to care for Child and has the ability to make appropriate child-care arrangements. Father is self-employed in the real estate business and Mother is a self-employed interior designer.

(14) The history of drug or alcohol abuse of a party or member of a party's household.
Mother has a history of alcohol abuse. She attended an in-patient rehabilitation facility in February 2017 for three weeks. She testified that she has maintained sobriety since leaving the facility. Father's proposal of shared physical custody supports the conclusion that Mother's history of alcohol abuse does not interfere with her current ability to perform her parental duties.

(15) The mental and physical condition of a party or member of a party's household.

Neither party or member of a party's household has a mental or physical condition that is other than normal.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

Not applicable.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

6

Not applicable.

(16) Any other relevant factor.

International and domestic travel. Father seeks to travel to India with Child to spend time with her family there. Father's mother is elderly and precluded from traveling due to infirmity. In addition, Father frequently travels domestically during his custodial periods with Child. The August 21, 2018 order addresses the obligation of the travelling party to provide travel itinerary information to the other party. The Court does not consider Father a flight risk given the extensive ties he has to Philadelphia.

Composition of Father's household. Since the summer of 2018, Father's household has included L: . ., K( .. .. . Child has a positive relationship with Ms. K.. ..

The Court's order of August 21, 2018, vacated the Temporary Agreed Order of December 23, 2016. Father's petition for special relief filed October 12, 2017, seeking to void the custody agreement was denied as there was insufficient evidence to support a legal conclusion that Father entered into the agreement under duress or that the agreement was the result of coercion.

BY THE COURT:

Ourania Papademetriou, J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

AUG 2 1 2018

FIRST JUDICIAL DISTRICT OF PA
USER I.D..