J-S09018-18

2018 PA Super 100

| P.J.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.M. | : | No. 1586 MDA 2017 |

Appeal from the Order Entered September 19, 2017
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
13351 of 2013

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

OPINION BY McLAUGHLIN, J.:                    **FILED APRIL 27, 2018**

P.J.P. ("Father") appeals *pro se* from the order denying his Petition for Modification of a Custody Order with respect to his minor son, M.P. ("Child"). We conclude that the trial court did not abuse its discretion in awarding primary physical custody to M.M. ("Mother"), and did not err in not considering the factors set forth in **Wiseman v. Wall**, 718 A.2d 844 (Pa.Super. 1998), because the **Wiseman** factors have been superseded by statute. We therefore affirm.

Father and Mother married in March 2013 and separated in August 2013; Child was born in November 2013. It is not clear from the record if Father and Mother obtained a divorce.[1] They exercise custody of Child pursuant to an April 29, 2016 order, which awarded primary physical custody

_____

* Retired Senior Judge assigned to the Superior Court.

[1] During the custody hearing Father testified, "I think I'm divorced. I'm not 100 percent sure about that."  N.T., 8/30/17, at 103.

to Mother and partial physical custody to Father. Pursuant to the order, Father had partial custody on an alternating basis: Every other weekend, from Friday at 6 p.m. until Sunday at 6:00 p.m.; alternating Tuesdays from 8:00 a.m. until Wednesday 6:00 p.m.; and alternating Tuesdays from 8:00 a.m. until Thursday at 8:00 a.m. The court also awarded both parents shared legal custody.

On January 19, 2017, Father filed a Petition for Modification of a Custody Order, in which he requested shared physical custody of Child. The trial court conducted a two-day custody hearing[2] during which the parties each testified concerning their efforts to promote Child's relationship with the other party. Mother testified that she sends Father numerous pictures and videos of Child when he is in her custody, and encourages Child to call Father on the phone. N.T., 8/29/17-8/30/17, at 247-50, 288. Mother further testified that Father only sent her pictures of Child on "Christmas two years ago" and on the first day of the custody hearing. *Id.* at 247, 253. Mother testified that she receives no communication from Child when he is in Father's care. *Id.* at 248, 262. Father testified that Child did not want to call Mother during his periods of custody, and that he did not send pictures of Child because the camera on his phone broke. *Id.* at 171-72, 185-86.

The parties also testified as to their cooperation with the other party. Mother testified that Father engages in "mental terrorism" by belittling and

---

[2] Father had counsel at the time he filed his petition for modification, and during the custody hearing.

insulting her. *Id.* at 257-58. Mother recalled several instances during which Father belittled her in Child's presence, by yelling at her and telling Child that Mother is "mean." *Id.* at 254. In addition, Mother testified that Father told her that when Child was older, Father would have Child read the court documents on Google to make sure Child does not make the same mistake Father did by marrying a "toxic" person. *Id.* at 257. Although Mother admitted to insulting Father, she insisted that she has never done so in front of Child. *Id.* at 253-54, 266.

Father admitted that he called Mother "mean" in the presence of Child, but claimed it was because Mother was criticizing his job. *Id.* at 175-76. He further testified that he felt like he was being attacked when he spoke with Mother. *Id.* at 175. Father testified that he mentioned Google Scholar because he was concerned Child would be able to see the court documents when he is older. *Id.* at 198. Father wanted to remind Mother that everything is available on the Internet and to suggest that it would be better if they settled their differences. *Id.*

Mother also testified that she purchased gifts for Father from Child for Father's birthday, Father's Day, and Christmas. *Id.* at 250. Further, Mother purchased tickets for a Monster Truck show for Father and Child, which was during Mother's period of custody and Mother has invited Father to the park during her period of custody. *Id.* at 158-59, 249-50. Father testified that he had Child make Mother a necklace and a little handprint. *Id.* at 174.

The parties also testified about getting Child ready for preschool after returning from Father's custody. Mother stated that Father used to prepare Child for preschool, so that Mother could drop him off at school. *Id.* at 242-244. In approximately March 2017, Father refused to get Child ready. Instead, he would drop Child off at Mother's house while Child was in his pajamas. *Id.* Mother would not have sufficient time to prepare, and, therefore, Child would get to school late. *Id.* Father testified that this was because Mother had "unilaterally" changed the procedure for exchanging custody from one where Mother would pick up Child at Father's house, to one where Father would drop off Child. *Id.* at 144. According to Father, Mother texted Father one day two hours before the scheduled exchange that she was unable to pick up Child that day. *Id.* Father testified that she also said she wanted him to have Child ready for school when he returned Child to Mother's house. *Id.* at 145.

The parties both also testified about their experiences with co-parenting counseling. Mother testified that she attempted to improve her relationship with Father by suggesting that they attend co-parenting counseling. *Id.* at 245. Although Father attended the counseling, Mother said he refused to participate meaningfully.

> [Father] said I don't know why we're here. I'm filing for 50/50 custody next week and we'll continue to parallel parent. And then he checked his phone the whole time we were there as the counselor was talking to us about our issues and trying to get us set up with a counselor to move us forward.

*Id.* at 246. Mother testified that after several unproductive sessions, the counselor said they were "not going anywhere with this" and they were "too high conflict." *Id.* In contrast to Mother's testimony, Father testified that they attended two or three sessions and that he wanted to continue the sessions. *Id.* at 168-70.

The parties also offered testimony about Child's interactions with his extended family. Paternal Grandparents live in Virginia and visit with Father once per month. *Id.* at 80-81, 87. Child has visited Paternal Grandparents' home twice since birth. *Id.* at 110. In contrast, Mother's sister and Maternal Grandparents live within a few blocks of Mother. Child spends time with his maternal cousins on a weekly basis, and spends holidays, birthday parties, and vacations with his cousins. *Id.* at 206-207.

On September 19, 2017, the trial court denied Father's Petition for Modification. Father filed a *pro se* Motion for Reconsideration of Order on October 12, 2017, which the court denied that same day. Father filed a timely *pro se* Notice of Appeal on October 12, 2017.

Father now raises the following issues for our review.

> 1) Should this Honorable Court overturn the Trial Court's Custody Decision and grant [Father's] petition to modify the custody agreement based on the following factors:
>
> > 1. The Trial Court showed a bias toward a "preferred parent" when reaching a decision in this case.
> >
> > 2. The Trial Court reached unreasonable conclusions and misapplied the law when determining that Custody Factors 1, 5, 8, and 13 defined in PA 23 § 5328 were in favor of Mother.

3. The Trial Court based its decision on factors that had little or nothing to do with the best interests of the child[.]

4. The Trial Court did not analyze how the proposed modification impacted the child with regard to the defined Custody Factors and thus did not recognize that the proposed modification would serve the best interests of the child.

5. The Trial Court reached an unreasonable conclusion with regard to the four factors to be considered when awarding joint custody as established in **Wiseman v. Wall**, 718 A.2d 844 [(Pa.Super.] 1998)[.]

6. The Trial Court misapplied the law when considering the meaning and context for "minimal cooperation between the parties".

Father's brief at 3-4.

"In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion." **V.B. v. J.E.B.**, 55 A.3d 1193, 1197 (Pa.Super. 2012) (quoting **C.R.F. v. S.E.F.**, 45 A.3d 441, 443 (Pa.Super. 2012)). This Court "must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." **Id.** (quoting **C.R.F.**, 45 A.3d at 443). We defer to the credibility determinations of the presiding trial judge, "who viewed and assessed the witnesses first-hand." **Id.** (quoting **C.R.F.**, 45 A.3d at 443). We, however, "are not bound by the trial court's deductions or inferences from its factual findings[,]" and "[u]ltimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." **Id.** (quoting **C.R.F.**, 45 A.3d at 443). We may reject the trial court's conclusions "only if they involve an error of law, or are unreasonable in light

of the sustainable findings of the trial court." *Id.* (quoting *C.R.F.*, 45 A.3d at 443).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa.Super. 2014) (citing *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011)). A non-exclusive list of factors a court should consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In his first four claims, Father presents myriad challenges to the trial court's factual findings, credibility determinations, and conclusions. In essence, Father challenges the court's decision that a shared physical custody arrangement would be contrary to Child's best interest. Father devotes the majority of his argument to challenging the court's findings that the following factors weighed in favor of Mother: the party more likely to encourage and permit contact between the child and the other party, the availability of

extended family, the attempts of a parent to turn a child against the other parent, and the level of conflict between the parties.

We conclude that Father is not entitled to relief. The court made credibility determinations against Father. Specifically, the court believed Mother's testimony that Father threatened to have Child read documents from this litigation to make sure Child did not marry a "toxic person" like Mother. 1925(a) Op. at 5-6. The court further found that, contrary to Father's testimony, Child did not speak to Mother during Father's custody time because Father did not want Child to speak with Mother, and questioned Father's motive for not sending pictures of Child. *Id.* at 7, 8. The court thus concluded that "Father seems unreceptive to Mother's efforts and seems too bitter to accept anything less than equal physical custody of the minor child," and that on balance, awarding shared physical custody was not in Child's best interest. *Id.* at 12.

The court then analyzed each of the Section 5328(a) factors and determined that the majority of the factors either did not apply in this case or weighed equally in favor of both parents. *See* Trial Court Opinion, Filed Nov. 13, 2017, at 2-4 ("1925(a) Op."). The court did conclude that four factors weighed in favor of Mother – the likelihood of encouraging and permitting contact with the other party; the availability of extended family; attempts to turn the child against the other parent; and the parties' level of conflict and

willingness and ability to cooperate. However, the court did not conclude that any factor weighed in Father's favor. *Id.* at 4-12.

The record supports the trial court's factual findings, and in view of those findings, its legal conclusions are not unreasonable. The record confirms the court's determinations that Mother works to promote Child's relationship with Father and to improve the parents' co-parenting abilities, but that Father does not make similar efforts. It was therefore within the court's discretion to conclude that a shared physical custody arrangement was contrary to Child's best interest.

In his fifth and six claims, Father argues that the trial court abused its discretion by failing to award shared physical custody pursuant to *Wiseman*. In that case, this Court held that before awarding shared custody, trial courts must make four findings:

> (1) [B]oth parents must be fit, capable of making reasonable child rearing decisions and willing and able to provide love and care for their children; (2) both parents must evidence a continuing desire for active involvement in the child's life; (3) both parents must be recognized by the child as a source of security and love; (4) a minimal degree of cooperation between the parents must be possible.

718 A.2d at 848 (citations omitted).

Father argues that because, in his view, the evidence supports a conclusion that he and Mother meet the fourth *Wiseman* criterion – that the parents be capable of a minimal degree of cooperation – and because shared

physical custody would reduce conflict, the trial court should have granted his petition to modify custody.

Father's reliance on **Wiseman** is misplaced because we decided **Wiseman** (and other decisions applying the same rule[3]) before Section 5328(a) came into effect. We announced our decision in **Wiseman** in October 1998, whereas Section 5328 went into effect more than 12 years later, in January 2011. **See Wiseman**, 718 A.2d at 844; Act of Nov. 23, 2010, P.L. 1106, No. 112, § 5.[4]

The timing matters because Section 5328(a) incorporates each of the **Wiseman** factors. Under Section 5328(a), the court, in ordering any form of custody, must determine the best interest of the child by considering all relevant factors, including, but not limited to, "the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." 23 Pa.C.S.A. § 5328(a)(13). **Wiseman**, however, by its terms required the court, before awarding shared custody, "to make at least a minimal finding that the parties were able to cooperate before awarding shared custody." **Wiseman**, 718 A.2d at 849.

---

[3] **See**, **e.g.**, **Hill v. Hill**, 619 A.2d 1086 (Pa.Super. 1993); **Andrews v. Andrews**, 601 A.2d 352 (Pa.Super. 1991), **aff'd**, 625 A.2d 613 (Pa. 1993) (*per curiam*); **In re Wesley J.K.**, 445 A.2d 1243 (Pa.Super. 1982).

[4] Section 5328(a) was subsequently amended effective January 2014 to add subsection 5328(a)(2.1), which is not at issue in this case. The amendment therefore does not change our analysis here, and in any event, the amendment had an even later effective date.

The difference is not trivial. The rule in **Wiseman**, that trial courts make certain findings before awarding shared custody, contradicts the plain language of Section 5328(a). Section 5328(a), unlike **Wiseman**, does not require certain findings before a court may award shared custody. Under the current statute, courts must now consider all relevant factors, including the "ability of the parties to cooperate," when making an award of any form of custody, and poor cooperation need not be dispositive. The enactment of Section 5328(a) rendered the **Wiseman** analysis obsolete. **See M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa.Super. 2013) (holding primary caregiver doctrine, "insofar as it required positive emphasis on the primary caretaker's status," was no longer viable after the enactment of Section 5328).

Our reference to the **Wiseman** analysis in **R.S. v. T.T.**, 113 A.3d 1254, 1260 (Pa.Super. 2015), is not to the contrary. There, we determined that, in view of the evidence of record, the trial court's conclusions under the Section 5328(a) factors were unreasonable, including its determination that the distance and travel time between the parties' residences weighed against shared custody. **Id.** at 1259-60. We then concluded that the record demonstrated that the **Wiseman** factors had been met in that case, such that we rejected the trial court's conclusion that shared custody was not in the child's best interest. **Id.** at 1260 (citing **Hill**, 619 A.2d at 1086; **Andrews**, 601 A.2d at 352). We concluded that the trial court abused its discretion in awarding a mother primary physical custody. **Id.** at 1261.

However, we did not in *R.S.* address or even consider the issue decided here, that is, whether trial courts must make the ***Wiseman*** findings before awarding shared custody. Therefore, our conclusion in this case, that courts need no longer engage in the ***Wiseman*** analysis when determining whether shared custody is appropriate, is not in conflict with *R.S.*

To the extent our decisions discussing the ***Wiseman*** analysis retain persuasive value, Section 5328(a) no longer requires a trial court to give deciding weight to the four specific factors discussed in ***Wiseman*** when awarding shared custody. These four factors are assimilated into Section 5328(a).

In the instant case, the record supports the trial court's finding that the high level of conflict between Mother and Father would make a shared custody arrangement untenable. The trial court explained that it considered the parents' ability to cooperate as part of its analysis of the Section 5328(a) factors. 1925(a) Op. at 10-11. The court concluded that the parents lack a minimal degree of cooperation, making a shared physical custody schedule unworkable and contrary to Child's best interest. ***Id.*** at 10. As discussed above, the parents have a high-conflict relationship. The record confirms that they struggle to communicate with each other, and have been unable to resolve their interpersonal disputes. The court in this case also considered all the Section 5328(a) factors in reaching its conclusion that Mother should retain primary physical custody.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by denying Father's petition for modification of custody. Therefore, we affirm the court's September 19, 2017 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/27/18