J-A27035-18

2019 PA Super 126

| | | |
|---|---|---|
| T.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| H.M. | : | |
| | : | |
| Appellant | : | No. 1081 EDA 2018 |

Appeal from the Order Entered March 15, 2018
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2015-FC-462

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                    **FILED APRIL 24, 2019**

H.M. ("Father") appeals from the March 15, 2018 order awarding primary physical custody of his son J.M. ("Child") to T.M. ("Mother"); partial physical custody to Father; and shared legal custody to both parents. We conclude that the trial court did not abuse its discretion by awarding Mother primary physical custody and denying Father's petition to obtain increased physical custody. Therefore, we affirm.

Mother and Father were married in October 2009 and Child was born in December 2010.  By April 2015, Mother filed for divorce.  Following a custody conference in May 2015, the parties entered into an agreed interim order which stipulated that they would share legal custody of Child but Mother would have primary physical custody with partial physical custody on the weekends and scheduled dinner visits for Father. In July 2015, the parties agreed to enter a final custody order to this effect. However, thereafter the parties grew

unsatisfied with the custody schedule and each filed cross-petitions for modification. After a three-day custody trial in August 2016, the trial court entered a final order on September 15, 2016, which increased Father's overnight custody to Wednesday to Sunday on alternative weeks. The court fashioned Father's periods of physical custody to coincide with his bi-weekly work schedule as a doctor at a local hospital.

Father filed yet another petition to modify custody less than two months later in December 2016. Father contended that he had reduced his work schedule in hopes of obtaining more physical custody of Child. Father specifically pointed to the ten-day gap in custody he and Child experienced as detrimental to their relationship. Father also requested telephone contact and dinner visits during his non-custodial weeks. Mother filed an answer, counterclaim, and petition for contempt seeking to reduce Father's physical custody. Meanwhile, Father filed another petition, on April 13, 2017, seeking a full custody evaluation. After considering Father's request at a May 9, 2017 pretrial conference, the trial court ordered a psychological evaluation but declined to require a full custody evaluation.

After multiple continuances, the trial court conducted yet another multi-day custody trial in February 2018. During trial, Dr. Ronald J. Esteve testified regarding the psychological evaluation he completed regarding Child. Dr. Esteve testified about the positive relationship Child enjoys with both his parents but noted that Child had a difficult time talking about his respective parents in the presence of the other parent. He also acknowledged the

considerable acrimony between the parties. Although Dr. Esteve opined that a full custody evaluation might provide additional information to the court, he also indicated that a custody evaluation could likely contribute to the tension between the parties. Ultimately, the court decided not to order a full custody evaluation.

Also testifying at trial was Andrea Nation, Child's counselor. Ms. Nation reported that she did not feel focusing on requiring Child to call Father while with Mother was worthwhile because Child had demonstrated a clear aversion to making calls to the noncustodial parent. She explained that while both parties had been generally cooperative, there had been a two month period during which Father did not bring Child to counseling:

> [Mother's counsel]: You said father was cooperative. Did he ever stop bringing [Child] to counseling sessions?
>
> [Ms. Nation]: He wouldn't stop bringing [Child]. I just did not get consistent, as consistent requests from him for an appointment as I did from the mom, but I also – since I was only – I didn't see a need for him necessarily to be in here every single week. So, you know, when she had him, she would reach out to me, and when she didn't, he would reach out to me via e-mail, you know, and just, you know, say, how is [Child]? How is he doing? How is counseling? So, there's some exchange for him to call and set up an appointment. That started happening more recently, I would say, in the past couple of months.
>
> [Mother's counsel]: Yeah, didn't he stop bringing [Child] though to counseling in September of 2017?
>
> [Ms. Nation]: There was a break in counseling. There was not a request -- I had sent out an email to both parents because I was making it clear what my role, what role I felt comfortable having going forward would be, and that I did not think that the focus should be on [Child] making these phone calls because he didn't really have that interest nor did I see myself able to, at that

- 3 -

particular time, work through what was very contested between the two of them. Their relationship lacks trust on both ends, so I didn't see how I could work, facilitate co-parenting strategies with them since they didn't even speak to each other. So I didn't want to get involved with that. So I told them that I was focused on [Child's] expressions, you know, having a place for him where, you know, he felt safe and where he could share and learn how to share his emotions.

N.T., 2/13/18 at 71-72.

Further, in an effort to prove that Father was reluctant to take Child to counseling with Ms. Nation, Mother submitted a letter into evidence, written by Father's counsel, which indicated that Father had concerns about Ms. Nation's supposed faith-based counseling techniques and her alleged reluctance to meet with men one-on-one. The trial court also conducted an interview of Child, *in camera*, during which Child indicated that he wished to maintain the status quo in terms of physical custody and specifically stated that he did not want any additional overnight visits with Father.

After the trial, the trial court issued an order, dated March 15, 2018, which discussed the statutory factors set forth under 23 Pa.C.S. § 5328(a). Germane to this appeal, the court determined that Mother was slightly more likely to attend to the daily needs of Child due to her flexible work schedule. To this end, the court specifically found that Father likely worked more hours then he indicated. Likewise, the court noted that Mother could depend on her mother, Child's grandmother, for child care assistance, while Father could rely upon his girlfriend. The court also weighed the factor of which party was most encouraging of Child's relationship with the other parent slightly in favor of Mother. The court explained that Mother was more likely than Father to ensure

- 4 -

that Child would attend counseling to facilitate his parental relationships. The court deemed counseling particularly important due to the parents' acrimonious relationship.

However, the court did note that both parties were equally capable of maintaining a loving, stable, and nurturing relationship with Child. Further, the court weighed Child's stated preference to have the custodial schedule remain the same only slightly in favor of Mother due to Child's young age and attendant lack of maturity. Ultimately, the trial court altered the parties custody schedule only slightly by ordering partial physical custody for Father on alternative weeks from Thursday until Monday morning.

On April 11, 2018, Father filed the instant timely appeal, along with a Concise Statement of Errors Complained of on Appeal.

Father now raises the following issues for our review:

A. Did the trial court err in failing to order a comprehensive custody evaluation, as requested by [Father], and as recommended by Dr. Ronald Esteve, the court ordered psychologist?

B. Did the trial court err and abuse its discretion in failing to award [Father] additional time with [Child] based upon the statutory facts as enumerated in 23 Pa.C.S.A. § 5328(a) when [Father] works a week on/ week off schedule, and the effect of the court's order dated March 15, 2018, is that the minor child continues to go approximately ten (10) days with no contact with [Father]?

C. Did the trial court err in finding that 23 Pa.C.S.A. § 5328 factor #1 - which party is more likely to encourage and permit frequent and continuing contact between the child and another party - is weighed in favor of [Mother], and that factor #9 - which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs - was a neutral factor, despite the evidence of record,

- 5 -

including testimony from the court ordered psychologist and [Mother's] own sister?

D. Did the trial court err in finding that factor #7 - the well - reasoned preference of the child, based on the child's maturity and judgment - weighed in favor of [Mother] given the court's own recognition of the difficulties in measuring the maturity and reasoning of a seven-year-old child, as well as the fact that the court ordered psychologist opined that [Child] should not testify?

E. Did the trial court err in overemphasizing [Mother's] role as primary caretaker, despite the fact that [Father] has consistently requested additional time with [Child], has altered his work schedule to accommodate [Child], and tends to [Child's] educational, medical and emotional needs when [Child] is in his care?

F. Did the trial court err in its conclusion that [Father] stopped taking [Child] to therapy and that [Father] was not supportive [Child's] counseling, based upon the evidence of record?

Father's Br. at 16-17.

When reviewing a custody order, our scope of review is broad and our standard of review is an abuse of discretion. ***P.J.P. v. M.M.***, 185 A.3d 413, 417 (Pa.Super. 2018) (citation omitted). While this Court must accept the factual findings and credibility determinations of the trial court which are supported by competent evidence, we are not bound by the trial court's deductions or inferences from that evidence. ***Id.*** We will only reverse a trial court's custody order, if after giving due deference to a trial court's credibility determinations, we conclude that the court committed an error of law or an abuse of discretion. ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa.Super. 2005).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***P.J.P.***, 185 A.3d at 417 (citation omitted). A non-

exclusive list of factors a court should consider when awarding custody are set forth at 23 Pa.C.S. § 5328(a):

**(a) Factors.-** In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In a custody action, it is within the trial court's discretion based on the record before it to determine the relevant weight to give each of the Section 5328(a) factors in a particular case. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013). Further, while a child's custody preferences must be considered in a custody action, "[t]he weight to be afforded to the child's preferences varies with the age, maturity and intelligence of the child, together with the reasons given for the preference." *Gianvito v. Gianvito*, 975 A.2d 1164, 1170 (Pa.Super. 2009).

In his first issue, Father contends that the trial court erred by declining to order a full custody evaluation. Father argues that the evidence adduced at

trial demonstrated both Mother's bias against him and her manipulative behavior towards his relationship with Child. Thus, Father avers that a full custody evaluation would assist the court in recognizing Mother's malfeasance and the need for Father to gain more physical custody of Child. To this end, Father cites **Johns v. Cioci**, 865 A.2d 931 (Pa.Super. 2004), as an example of a similar case in which this Court required a full custody evaluation.

However, as noted by the trial court, pursuant to the Pennsylvania Rules of Civil Procedure a court is not mandated to order a full custody evaluation but may do so at its discretion. Pa.R.C.P. 1915.8(a); **see N.H.M. v. P.O.T.**, 947 A.2d 1268, 1276-77 (Pa.Super. 2008). Further, **Johns**, cited by Father, is inapposite because in that case the factual background was vastly different, including a desired relocation of the child there at issue. In this case, the trial court aptly determined that a full custody evaluation was not necessary in light of all the information elicited at the full custody trial. Further, the court emphasized that Dr. Esteve indicated that a full custody evaluation might result in increasing the already rampant animosity between the parties. Therefore, we conclude that the trial court did not abuse its discretion by declining to order a full custody evaluation and Father's first issue lacks merit.

In his next three issues, Father finds fault with the trial court's findings pursuant to Section 5328(a). Father begins by generally arguing that the court erred by determining that increased time with Father would not serve Child's best interests. Father points to his increased availability for Child due to his reduced work schedule. He also contends that the trial court wrongly weighed

Section 5328(a)(1), regarding which parent would more likely encourage contact between Child and the other party, against him. To this end, he emphasizes that he has allegedly offered Mother more custodial time with Child while Mother does not offer him the same but instead turns to Child's grandmother for childcare assistance.

Father also avers that that the trial court incorrectly found that Section 5328(a)(9), regarding which party is more likely to maintain a loving, stable and nurturing relationship with Child, was a neutral factor between the parties. Father points to testimony from Dr. Esteve that he contends indicates that Father has a closer bond with Child than Mother. Lastly, Father argues that the trial court erred by placing any weight whatsoever on Child's custody preference. Father argues that Child's stated desire to maintain the custody status quo was made as the result of immaturity and was not supported by any specific reasoning.

The trial court addressed Father's contentions by considering the Section 5328(a) factors on the record as required. *See M.J.M.*, 63 A.3d at 339. In its Pa.R.A.P. 1925(a) opinion, the court finds that Mother's schedule has proven to be more flexible over time and that Father was likely working more hours than he avers. Plus, the court noted that Mother could rely on Child's grandmother. Thus, the court found that Mother was more likely to be able to attend to the daily needs of Child. The trial court was well within its purview when deciding which Section 5328(a) factors to accord the most weight. *M.J.M.*, 63 A.3d at 339. In essence, Father asks this Court to re-weigh

- 10 -

the evidence and re-assess the trial court's credibility determinations. This we cannot do. **See P.J.P.**, 185 A.3d at 417. Accordingly, Father's second and third issues challenging the trial court's application of the Section 5328(a) factors do not warrant relief.

Moreover, we hold that the trial court did not abuse its discretion by according weight to Child's preference to maintain the custody status quo. As mandated, the trial court considered Child's maturity and acknowledged Child's likely propensity to feel "caught in the middle" of his parents. **See Gianvito**, 975 A.2d at 1170. Thus, the trial court properly noted that Child's preference should be weighed only "slightly" in favor of Mother. We decline to conclude that the trial court's decision to accord weight, if only slightly, to Child's custody preference constitutes an abuse of discretion. Therefore, Father's fourth issue on appeal also must fail.

Turning to his fifth issue, Father claims that the trial court placed undue weight on the notion that Mother has served as Child's primary caretaker. Father points out that this Court's decision in **M.J.M.** clarifies that the caretaking responsibilities are but one factor to be considered under Section 5328(a)(3). **See M.J.M.**, 63 A.3d at 338. Here, Father argues that Mother's increased caretaking is only a function of the current custody schedule and contends that the trial court did not sufficiently take into account his reduced work schedule.

We cannot agree. The trial court specifically indicated that it did not attribute substantial weight to the caretaking factor and weighed it only

"slightly" in favor of Mother. Moreover, the trial court aptly noted that, generally speaking, Mother's schedule is more flexible and that Mother has tailored her schedule around Child's needs. Accordingly, the evidentiary record supports the trial court's findings and Father's fifth issue also lacks merit.

In his sixth and final issue, Father asserts that the trial court erred by determining that he had failed to take Child to therapy when the evidence of record did not support that conclusion. Father points to Ms. Nation's testimony at trial where she stated that both parents had brought Child to counseling sessions and that scheduling issues of her own had impeded therapy. Further, Father points to Ms. Nation's testimony that Father has maintained "consistent contact" with her regarding Child.

Conversely, the trial court cites Ms. Nation's testimony in which she admits that a "break in counseling" did occur and that Mother more consistently requested appointments for therapy. The court noted that Father admitted that he did not take Child to therapy in October or November. Further, the court points to Father's counsel's letter to Mother, noting his objections to Ms. Nation as a counselor for Child. The trial court had ample evidence of record to support its factual findings and credibility determinations regarding Father's reluctance to facilitate counseling with Ms. Nation. Therefore, we are bound by those factual determinations and conclude that Father's sixth issue also does not merit relief. **See P.J.P.**, 185 A.3d at 417.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by awarding Mother primary physical custody and denying

Father's petition to obtain increased physical custody. Therefore, we affirm the court's March 15, 2018 order.

Order affirmed.

Judge Stabile joins the Opinion.

Judge Bowes files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/24/19