J. A02040/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.L.T, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1341 WDA 2019 |
| | : | |
| J.S.T. | : | |

Appeal from the Order Entered August 7, 2019,
in the Court of Common Pleas of Butler County
Civil Division at No. F.C. No. 18-90307

BEFORE:  SHOGAN, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 14, 2020**

C.L.T. ("Mother") appeals from the August 7, 2019 final custody order that awarded sole legal custody of A.T., female child born in January 2009, and K.T., female child born in July 2011 (collectively, the "Children"), to Mother and 50-50 shared physical custody of the Children to Mother and J.S.T. ("Father").  We affirm.

The trial court set forth the following:

> [Mother and Father] were married in 2007 but are currently separated, with their divorce matter pending.  The parties continued to reside in the marital residence at the time that the divorce and custody complaints were filed by Mother in May 2018.  However, since October 2018, Mother has moved out of the marital residence.  On October 19, 2018, an interim Custody Order was entered whereby the parties were given shared physical custody on a 5/5/2/2 schedule, whereby the [C]hildren are with Mother on Monday and Tuesday overnight and with

> Father on Wednesday and Thursday overnight. The parties alternate weekends with the [C]hildren from Friday until Monday. A four-day custody trial was held on April 9th, 11th, and 12th, 2019, and concluded with additional testimony from Dr. [Eric] Bernstein on May 6, 2019.

Trial court opinion, 7/19/19 at 1-2.

The record reflects that on July 19, 2019, the trial court filed an opinion and an order. In the opinion, the trial court conducted a best-interest analysis pursuant to 23 Pa.C.S.A. § 5328(a). In the order, the trial court awarded sole legal custody of the Children to Mother and 50-50 shared physical custody of the Children to Mother and Father. Both parties filed motions for reconsideration. On August 6, 2019, the trial court heard oral argument on the motions for reconsideration. On August 7, 2019, the trial court entered its final custody order wherein it awarded sole legal custody of the Children to Mother and 50-50 shared physical custody of the Children to Mother and Father. Mother filed a timely notice of appeal, together with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). Thereafter, the trial court filed a Rule 1925(a)(2)(ii) opinion.

Mother raises the following issues for our review:

> 1. Did the trial court commit an abuse of discretion and/or error of law when it ordered that the parents should share physical custody on a 50-50 basis, even though it found that each of the sixteen custody factors under 23 Pa.C.S.A. § 5328(a) weighed in favor of Mother or were neutral?

2. Did the trial court commit an abuse of discretion and/or error of law when it ordered that the parties should share physical custody on a 50-50 custody basis, even though it awarded Mother sole legal custody and found that Father's behavior was "appalling", detrimental to the children, and not likely to change?

3. Did the trial court commit an abuse of discretion and/or error of law when it ordered that the parties should share physical custody on a 50-50 basis when it found that Father's inability and lack of desire to communicate with Mother precluded a shared legal and physical custody arrangement?

4. Did the trial court commit an abuse of discretion and/or error of law when it ordered that the parties should share physical custody on a 50-50 basis without considering evidence related to Father's travel and work schedule and ability to make arrangements for child care?

Mother's brief at 34.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. We defer to the credibility determinations of the presiding trial judge, who viewed and assessed the witnesses first-hand. We, however, are not bound by the trial court's deductions or inferences from its factual findings, and ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the trial court's conclusions only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

When a trial court orders a form of custody, the best interest of the child is paramount. A non-exclusive list

of factors a court should consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

(1)     Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)     The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1)    The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3)     The parental duties performed by each party on behalf of the child.

(4)     The need for stability and continuity in the child's education, family life and community life.

(5)     The availability of extended family.

(6)     The child's sibling relationships.

(7)     The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)     The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)     Which party is more likely to maintain a loving, stable, consistent and nurturing

> relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> (11) The proximity of the residences of the parties.
>
> (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
>
> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
>
> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.
>
> 23 Pa.C.S.[A.] § 5328(a).

***P.J.P. v. M.M.***, 185 A.3d 413, 417-418 (Pa.Super. 2018) (internal citations, quotation marks, and brackets omitted).

Following consideration of the factors set forth in Section 5328(a), the trial court may award any of the following types of custody, so long as it is in the best interest of the child:

> (1) Shared physical custody.

(2)     Primary physical custody.

(3)     Partial physical custody.

(4)     Sole physical custody.

(5)     Supervised physical custody.

(6)     Shared legal custody.

(7)     Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Here, the trial court found that Factors 1, 3, 9, and 10 weighed in Mother's favor.  The trial court further determined that Factors 2, 4, 5, 8, 11, 12, 14, and 15 weighed in favor of neither party and that Factor 6 was irrelevant.  With respect to Factor 7, which is the well-reasoned preference of the child, the trial court noted that it

> received [A.T.'s] testimony in-camera.  She at first described the current custody arrangement as "pretty OK[."]  Later she did an about-face, informing the [trial c]ourt that she would like to spend her weekdays with Mother and spend every other weekend with Father.
>
> [A.T.'s] "pretty OK" opinion was taken by the [trial c]ourt as a statement which would allow her to tell everyone (including Father) that she told the judge that things were alright as they are now.  The [trial c]ourt finds the desire that Father have only alternate weekend[s] is [A.T.'s] real desire.  The [trial c]ourt finds that her reason for primarily wanting to live with Mother is because she can better, more openly express herself to Mother.
>
> The [trial c]ourt notes that Dr. Bernstein reported that Mother

> ". . . presents a caring, nurturing figure who devotes time and attention to the [Children]. The [Children] identified her as an integral support figure in their young lives and upon whom they rely for their needs."

The evaluator also reported that Father

> ". . . presents as a well-intentioned and actively supportive father to whom [the Children] are attached."

Dr. Bernstein's reports are, of course, both positive. However, his perception of Mother buttresses [A.T.'s] reason as to why she wants to primarily live with Mother.

Lastly, [A.T.] expressed her opinion to Dr. Bernstein (in her second interview) that she wants to live primarily with Mother.

Trial court opinion, 7/19/19 at 9-10.

With respect to Factor 13, which is the level of conflict between the parties, the trial court concluded that

> [t]his factor will play a major role in the [trial c]ourt's decision.
>
> Father has an "unequivocally (sic) and unrelenting bitterness" towards Mother. So concludes Dr. Bernstein in his written evaluation. This conclusion is more than amply supported by the evidence. The [trial c]ourt does not mean to suggest that there is no cause for his bitterness or that his bitterness has no

> justification. Such a suggestion would be contrary to the evidence.
>
> Father has at all times pertinent hereto essentially not spoken to Mother about the [C]hildren and has limited his communication to the use of Our Family Wizard. Noteworthy is the fact that Father, during his direct examination at trial, advised the [trial c]ourt that he generally wants to limit Mother's communication to Our Family Wizard messages; that such messages be limited to one per day; and that each message must be thirty words or fewer!
>
> Father's rancor, as stated above, was more than amply proven by the evidence. Several incidents are illustrative of how Father's attitude toward Mother can affect the [C]hildren.

*Id.* at 13-14 (citation to Dr. Bernstein's report omitted). The trial court then set forth three illustrative incidents, including an example of how "Father's hesitancy to communicate with Mother (and possibly his hesitancy to agree to anything that she suggested)" caused a delay in the Children receiving counseling, which delay was detrimental to the Children. (*Id.* at 14-15.)

With respect to Factor 16, which permits the trial court to consider any other relevant factor, the trial court found the following relevant:

> [A.T.] was interviewed by Dr. Bernstein on two different occasions. Concerning the second interview, [Dr.] Bernstein wrote that [the Children] had been rude to each other in his presence before the interview commenced. During the interview [A.T.] told him that if [M]other, rather than [F]ather, had accompanied the two girls that day, "she (Mother) would have found a way for us to compromise or something . . . pretty quickly instead of [Father] letting me do what I want." [Dr.] Bernstein considered [A.T.'s] acknowledgement to be insightful.

* * * * *

> [K.T.] on several occasions tried to act as a peacemaker between Father and Mother.

* * * *

> Father and Mother attended three co-parenting sessions together. Their counselor was James Shamlin. Father twice walked out of two of the sessions. The co-parenting sessions ceased, and Shamlin began to implement a parallel parenting strategy in order to better the situation of [this] family.

*Id.* at 17.

Mother's first three issues challenge the trial court's award of 50-50 shared physical custody based on her claims that the trial court erred because (1) it found that the 16 factors in the best interest analysis either weighed in Mother's favor or were neutral; (2) it "found that Father's behavior was 'appalling'"; and (3) it further found that "Father's inability and lack of desire to communicate with Mother precluded a shared legal and physical custody arrangement." (**See** Mother's brief at 34.) Mother also claims that the trial court "offered no discussion or analysis as to why Father should share physical custody." (**Id.** at 45.) The trial court, however, set forth the following:

> Father's testimony and exhibits, as well as the custody evaluator's testimony and report, necessarily lead the [trial c]ourt to conclude Father is well-bonded with both [A.T.] and [K.T.], and vice-versa. Father obviously is well-intentioned and actively supportive of both [C]hildren. He is quite capable of meeting the

day-to-day physical and educational needs of the children.

The evidence established that Mother was the primary caretaker of the [C]hildren before the parties' separation. She is a caring and nurturing figure who has always devoted time and attention to her two daughters. Mother has been the more nurturing of the two parties over the years, and [A.T.] finds it easier to talk to Mother about things than she does with Father.

The parties have had a 50-50 physical custody arrangement in place for a substantial period of time. The [C]hildren appear to have adapted well to it. The [trial c]ourt acknowledges that [A.T.], at age 10, expressed her desire of spending most time with Mother.

What has thus far been stated in this Discussion would seem to indicate that a shared legal and shared physical custody arrangement is "doable" by the parties. However, the inability and lack of desire of Father to communicate with Mother precludes such an arrangement.

The [trial c]ourt believes the Father's unwillingness to communicate with Mother about her proposal to have the [C]hildren counseled for the separation/divorce stress that they experienced was appalling. Instead of talking to Mother about her proposal (the correct option), he talked to the [C]hildren about it (the incorrect option). He appeared to be playing a game with Mother by not timely responding to her reasonable proposal.

Behavior like this is very likely to continue to the detriment of the [C]hildren. Father's desire to limit Mother's Our Family Wizard communication to him to thirty words and to no more than once daily supports this conclusion. Of course, no improvement in this area will ever occur until Father resolves his own anger and bitterness problems.

> The [trial c]ourt's Order will provide for a shared physical custody arrangement, but Mother will have sole legal custody. She has demonstrated that she is more capable than Father of identifying certain needs of the [C]hildren. The [C]hildren are more likely to have their problems addressed more promptly in a sole legal custody arrangement than in a shared legal custody situation. The stress to everyone in [this] family will be reduced by minimizing the communications between Father and Mother.

*Id.* at 17-18.

A reading of Mother's brief on her first three issues clearly demonstrates her dissatisfaction with the shared physical custody award. Mother sets forth each of the 16 best-interest factors and highlights portions of the trial court's analysis of these factors in an effort to convince this court to reweigh the evidence and reach a different result. It is well-settled that this court cannot reverse a trial court's decision merely because the record could support a different result. *See In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003). When we review a custody order, "the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *P.J.P.*, 185 A.3d at 417 Our thorough review of the record in this case demonstrates that competent record evidence supports the trial court's factual findings and its award of shared physical custody is reasonable in light of those findings.

Mother finally complains that the trial court erred in awarding shared physical custody because it failed to consider Father's travel schedule.

Before making an award of custody, the Child Custody Act requires trial courts to consider all 16 factors set forth at Section 5328(a) to the extent the

factors are relevant. ***A.V. v. S.T.***, 87 A.3d 818, 823 (Pa.Super. 2014). Moreover, "there is no required amount of detail for the trial court's explanation [of the Section 5328(a) factors]; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa.Super. 2013). Additionally, "[i]t is within the trial court's purview as the finder-of-fact to determine which factors are most salient and critical in each particular case." ***Id.*** at 339.

Here, the trial court considered all of the enumerated factors set forth in Section 5328(a), which the Child Custody Act required it to do. Nothing supports Mother's contention that the trial court was required to include Father's travel schedule in its Section 5328(a) analysis in order to conduct a sufficient best-interest analysis. We discern no error of law and no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/14/2020

- 12 -