J-S15001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COREY EBERSOLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SUZANNA METZGAR | : | |
| | : | |
| Appellant | : | No. 63 WDA 2021 |

Appeal from the Order Dated December 10, 2020
In the Court of Common Pleas of Butler County Domestic Relations at
No(s):  F.C. No. 20-90063-C

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                     **FILED: JUNE 28, 2021**

Suzanna Metzgar (Mother) appeals from the order, entered in the Court of Common Pleas of Butler County, granting the parties shared legal custody of S.A.E. (Child) (born 6/14), granting Corey Ebersole (Father) primary physical custody during the school year, granting Mother partial physical custody during the school year (every other weekend), and granting the parties shared physical custody during the summer.  After our review, we affirm.

Mother and Father had a two-year relationship, during which Child was born.  The relationship ended in September of 2015.  At that time, Child was approximately fifteen months old. Child has been diagnosed with cerebral

_____

[*] Retired Senior Judge assigned to the Superior Court.

palsy, asthma, hypotonia,[1] and has had multiple types of seizures. Child also suffers from developmental, physical, and cognitive delays.

On October 1, 2015, Father filed a custody complaint and requested shared custody. The parties attended custody conciliation on November 5, 2015; on December 29, 2015, the parties entered into a temporary shared custody arrangement, which the court entered as an interim order. **See** Consent Order, 12/29/15. Pursuant to that order, the parties shared physical custody of Child on a four-week rotating schedule. The first four weeks Father had custody every weekend (Friday to Monday); the second four weeks Father had custody Friday to Monday on week 1, Friday to Tuesday on week 2, Friday to Monday on week 3, and Friday to Tuesday on week 4. The parties shared legal custody of Child.

The court held a custody hearing on April 27, 2016. On May 16, 2016, the court entered a final order granting Mother and Father shared legal custody of Child and granting Mother primary physical custody of Child subject to Father's partial custody rights, as follows:

> a. Father shall have physical custody of the first, third, fourth and fifth weekends of a five-week cycle, from Friday at 5:00 p.m. until Monday at a mutually agreeable time. On the second weekend, Father shall have custody from 5:00 p.m. Friday until 5:00 p.m. Saturday. The first

---

[1] Hypotonia is a medical term used to describe decreased muscle tone and strength, a common finding with cerebral palsy and other neuromuscular disorders. https://www.ninds.nih.gov/Disorders/All-Disorders/Hypotonia-Information-Page (last visited 6/9/21).

> five-week cycle shall commence on the first Friday following the entry of this custody order.
>
> b. Father also shall be entitled to two additional five-day periods of custody during the year, of [] which he shall notify Mother at least 60 days in advance. During these periods, Father shall ensure that [Child] attends any regularly scheduled therapy.

Order, 5/16/16.[2] The order also provided for shared physical custody on holidays on an alternating schedule. *Id.*

On February 10, 2020, Father filed a petition to modify custody. In his petition, Father sought primary physical custody of Child, who was now of school age, stating that change of custody would be in Child's best interests, that "Father can, has and will continue to furnish [C]hild with a suitable and proper environment[,]" and that "Father can, has and will provide [C]hild with love, affection, care, treatment, and all other necessary parental duties and obligations which the [C]hild needs and deserves." Petition for Modification of Custody, 1/7/20, at 2. Father also cited "Mother's unwillingness to co-parent with Father."[3] *Id.*

Mother filed a counter petition for modification, seeking primary physical custody of Child and primary legal custody with respect to medical decision-making. *See* Counter Petition for Modification, 3/18/20, at 3. Mother also

---

[2] The order, entered by the Honorable James J. Panchik, set forth a comprehensive analysis of the statutory custody factors, 23 Pa.C.S.A. § 5328(a)(1)-(16), pursuant to the Child Custody Act, 23 Pa.C.S.A. §§ 5328–5340.

[3] We note the May 2016 order did not require the parties to attend co-parenting counseling.

- 3 -

cited "Father's unwillingness to co-parent with Mother and properly care for [C]hild during his periods of physical custody." *Id.*

On November 9, 2020, a custody trial was held before the Honorable Kelley T.D. Streib. At trial, Father, Father's fiancée, Mother, and Mother's sister testified. On December 10, 2020, Judge Streib issued findings of fact, analyzed the statutory custody factors, and entered the order granting the parties shared legal custody, granting Father primary physical custody of Child during the school year, granting Mother partial physical custody during the school year (every other weekend and every weekend if she can adjust her work schedule), and granting the parties shared physical custody in the summer. The court also ordered the parties to engage in co-parenting counseling. *See* Order, 12/10/20.

Mother filed a timely appeal on January 8, 2021. Both Mother and the trial court have complied with Pa.R.A.P. 1925.

Mother raises the following issues on appeal:

1. Did the trial court commit an abuse of discretion and/or error of law when it ordered that Father should have primary custody of the minor Child[,] vastly reducing Mother's custody time with [] Child?

2. Did the trial court commit an abuse of discretion and/or an error of law when it ordered Mother should have partial custody of the Child on an every other weekend basis, ignoring Mother's contracted work schedule that provides she must work every weekend, thus causing Mother extraordinarily limited time with the minor Child?

3. Did the trial court commit an abuse of discretion and/or an error of law when it ordered that Father should have primary custody of the minor Child focusing on the distance between the

parties' residences as reason for change from Mother having primary custody of the minor Child to Father having primary custody of the minor Child instead of a less drastic change in custody, such as a 50/50 arrangement?

4. Did the trial court commit an abuse of discretion and/or an error of law when it ordered that Father have primary custody of the minor Child, but failed to discuss and/or consider the possible effect on the Child such a drastic change in custody may have?

5. Did the trial court commit an abuse of discretion and/or an error of law when it determined that "[b]oth parties have available childcare and the ability to make childcare arrangements. However, Father has [the] full time support of his fiancé[,]" when Mother provides the childcare for the minor Child during the week, making her childcare arrangements a nonissue?

Appellant's Brief, at 8-9.

We address Mother's claims together. Our scope and standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F., III v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An

- 5 -

abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa. Super. 2010) (en banc) (internal citations omitted). Further,

The parties cannot dictate the amount of weight the trial court places on the evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009).

Mother argues the court erred in basing the change in custody "on the conflict between the parties, the distance between the parties' residences, and the parties' respective childcare availability." Appellant's Brief, at 12. Mother claims the evidence did not justify changing custody, particularly where Mother had primary custody for the Child's first six years. ***Id.*** Mother also argues that the evidence did not support a "drastic change in custody" and was not in Child's best interest. ***Id.  See*** 23 Pa.C.S.A. § 5328(a) (factors to consider when awarding custody).

Prior to the termination of their relationship, Mother and Father resided together in Freeport, Armstrong County. They now reside approximately 34 miles from one another; Father lives in in Pittsburgh, Allegheny County, and Mother lives in the Sarver area of Butler County. Both parties reside with their respective fiancés.

At the time of trial, Child was enrolled in kindergarten at Buffalo Elementary School in the Freeport Area School District in Butler County (50% remote for the 2020-21 school year), and the school was preparing an Individualized Education Program (IEP) for him. Child receives physical and occupational therapy at school.

Father is employed as an analyst at FedEx Ground. He usually works from 7:00 a.m. until 3:00 p.m.; his schedule is flexible, and he can work from home. Father's fiancée is a teacher in the South Fayette School District; she is bonded to Child and is available to pick Child up from school. *See* Findings of Fact, 12/10/20, at 2.

Mother is a registered nurse in the cardiac intensive care unit at UPMC Presbyterian Hospital in Pittsburgh. Mother's work schedule varies, but she works extended weekend shifts when she does not have custody of Child. The trial court found Mother "was not credible in her assertion that there were no work opportunities available for weekday shifts." *Id.* at 3.

The paramount concern in any custody case under the Child Custody Act is the best interests of the child. *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018. In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors. *See* 23 Pa.C.S.A. §§ 5328, 5338. Section 5328(a) sets forth the factors that the trial court must consider in awarding custody:

§ 5328. Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. §§ 5328(a) (1)-(16).

In its opinion in support of its order, the trial court carefully analyzed and addressed each factor pursuant to section 5328(a) and the Child's best interests as follows:

(1)    **Father** is more likely to encourage contact between Mother and Child; Mother used COVID-19 pandemic as a means to thwart Father's parenting time; Mother attempts to micromanage Father's parenting time and exclude him from Child's medical appointments;

(2)    and (2.1) **Inapplicable**; no evidence of abuse;

(3)    **Neutral**; each parent performs parental duties

(4)    **Father's** home life historically more stable (court pointed to Mother's prior relationships).

(5)    **Mother** has ample extended family available in the area;

(6)    **Inapplicable**; Child has no siblings;

(7)    **Neutral**; parties agreed Child was unable to give a well-reasoned preference due to his age, maturity, and special needs.

(8)    **Father** is less likely to turn Child against Mother; Mother makes subtle attempts to undermine Father's parenting and to affect Child's opinion of Father;

(9)    **Neutral**; both Mother and Father maintain a loving relationship with Child;

(10)   **Neutral**; both parties attend to Child's physical, emotional, developmental, educational, and special needs;

(11)   **Neutral**; court noted this is a major issue because, but for the distance between Mother's and Father's residences, a shared custody arrangement would be appropriate and in Child's best interest;

(12) **Neutral**; both parties have available childcare and the ability to make childcare arrangements;

(13) **Father** is more willing to co-parent with Mother;

(14) **Inapplicable**; no evidence of drug or alcohol abuse;

(15) **Inapplicable**; neither party has physical or mental limitations;

(16) With respect to Child's special needs, court favored **Father's** approach to meeting Child's special needs and at the same time letting him be a child; court noted Mother is overprotective; Father's residence is closer to Children's Hospital and many of his medical providers.

*See* Trial Court Opinion, 12/10/20, at 2-5.

A few issues exacerbate this custody dispute. First, although Child is doing well and progressing, it is clear Mother and Father have different parenting approaches. Both have good intentions and want what is best for Child, but Mother is overprotective[4]–which is understandable with a special needs Child–and Father cannot seem to meet Mother's standards of care or protection. As an example, Father testified at trial that he bought Child a bicycle with training wheels and Child was riding it well. Father stated:

A: Shannon (Father's fiancée) and I both were impressed with his ability to be able to ride the bike at the local park. I mean, he was smiling from ear to ear. He loved it. He was ecstatic. And

---

[4] At the start of the COVID-19 pandemic, Mother, an ICU nurse, filed an emergency motion for special relief seeking to preclude Father from his custody time. In her petition, Mother expressed "extreme concerns with regard to the child being transported between the residences during the COVID-19 pandemic as the child suffers from multiple physiological conditions that would make him more susceptible to the virus if he were to be exposed to the same." Mother's Emergency Petition for Special Relief, 3/19/20, at ¶ 4. Judge Streib denied this petition. *See* Order, 3/19/20. Thereafter, Mother was exposed to the virus, was tested, and was required to quarantine for 14 days, at which point Father kept Child for the quarantine period. Despite Mother working as a front-line health care professional during the pandemic, Father did not seek to preclude Mother from her custody time. *See* N.T. Custody Trial, *supra* at 60.

then he went back to [Mother's] for the week, and I don't know what happened. He came back and we tried to get him to ride the bike again, and he was scared. He was scared. You know, I really feel that [Mother] alienated his opinion and destroyed his confidence on the bike. I mean, he does have an adaptive Rifton bike at her place, or essentially a three-wheeler or a trike. It's much easier to pedal. But I feel with continued practice and confidence, we would have been able to take those training wheels off his bike eventually. I mean, I still have it. It's something that, you know, I would like to revisit again down the road with him.

Q: So, had [Mother] said things to you directly about [Child's] use of the pedal bike at your house?

A: She did. She didn't feel it was safe. And I felt he had– I mean, I learned how to ride a bike as a kid. [] I got cuts, bruises, cuts and scrapes. You know, he fell off his bike. And I feel that [Mother] just beat it into [Child's] brain that it's not safe; ["]I don't want you to ride that.["]

Q: Is it fair to say that her expression of disagreement with his use of the bike, to you, and [Child's] fear of the bike happened somehow contemporaneously?

A: Yes.

Q: Is that why you believe that she influenced [Child] to not want to ride the bike anymore?

A: She did. Yeah. [Mother's] opinion is– you know, weighs heavily on [Child].

N.T. Custody Trial, 11/9/20, at 52-53 (emphasis added).

Second, Mother's hostility has been documented and acknowledged by the court in the May 2016 order. Judge Panchik, who entered the May 2016 custody order, stated the following in his section 5328(a) analysis:

[T]here is a clear indication in the written communications between the parties that Mother at times will use [Child] as a way to get back at Father and his family members [] if she is angry. [] Although it is clear that Mother provides well for [Child] and takes a significant interest in his health and well-being, it also is clear

- 11 -

to the [c]ourt from the evidence presented that she is the source of the vast majority of the conflict between the parties. Mother routinely uses insults, threats, profanity, and harassing and belligerent language in her communications with Father. [] **To the extent that the parties' conflict could inhibit their ability to co-parent, communicate, cooperate, and share parenting responsibilities, the [c]ourt finds that Mother's vindictive and retributive manner is the primary cause of such conflict.**

*See* Memorandum, 5/16/16, at 6, 9-10 (emphasis added). In her custody analysis for the current order, Judge Streib stated that "[d]uring the custody trial, Mother showed visible animosity when discussing Father." Findings of Fact, 12/10/20, at 4. The conflict may not have been damaging to Child when he was an infant, but that is no longer the case.

Finally, Child is of school age now. Given the distance between the parties' residences, Mother's suggestion of a 50/50 custody schedule is simply not practical during the school year. Mother does argue, however, that since she only works on weekends and is available during the week to get Child to school and back (or on the bus and off the bus), the custody order ignores her work schedule (12-hour weekend shifts/24 hours per week) and results in "extraordinarily limited time with [Child]." Appellant's Brief, at 20. Mother testified that: she only works weekends; her weekend shift work is considered full-time; at present there are no full-time weekday shifts available; and if she were to switch to a weekday schedule, she would take a cut in pay. *See* N.T. Custody Trial, *supra* at 136-37. If Mother works 12-hour shifts every weekend, the custody order essentially precludes her from custodial time unless she changes her work schedule to weekday work.

Although we would be inclined to agree with Mother's argument on this point, Judge Streib specifically found Mother's testimony with respect to her work schedule not credible. *See* Findings of Fact, *supra* at 3. Notably, despite testifying that weekday hours were not available, *see* N.T. Custody Trial, *supra* at 136, she subsequently testified that she had not looked into it. *See* N.T. Custody Trial, *supra* at 137 ("Q: So have you looked into whether you could get more hours by working during the week? A: No."). In fact, Judge Streib found that Mother's testimony as to her work schedule "was defensive and shaded" and "motivated to keep the custody arrangement status quo." Rule 1925(a) Opinion, 2/9/21, at 3-4.

It is well established that this Court is bound by the credibility determinations of the trial judge, "who viewed and assessed the witnesses first-hand." *R.L.P. v. R.F.M.*, 110 A.3d 201, 207-08 (Pa. Super. 2015).

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Id.* at 208. *See also J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011) (with regard to issues of credibility and weight of evidence, we defer to presiding trial judge). Although this Court has a broad scope of review, we are "not free to nullify the fact-finding function of the trial judge and must defer to [her] findings where they involve the credibility of witnesses." *Nancy E.M. v. Kenneth D.M.*, 462 A.2d 1386, 1388 (Pa. Super. 1983).

Additionally, with respect to Mother's argument that the court "based the change in custody" on the parties' conflict, the distance between their residences, and their respective childcare availability, Appellant's Brief, at 12, we point out that the court analyzed each of the statutory custody factors, and concluded five of the sixteen factors favored Father, one favored Mother, and the remaining ten were either neutral or inapplicable. This Court has stated that the trial court is required to consider all of the section 5328(a) factors when entering a custody order. *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011). Although the trial court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to section 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). As we stated in *M.J.M.*, "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id.*, citing *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010). *See also R.M.G., Jr.*, *supra* at 1237 ("The parties cannot dictate the amount of weight the trial court places on evidence."). Here, Judge Streib determined Father was more likely to encourage contact between Mother and Child. 23 Pa.C.S.A. § 5328(a)(1). The record, including the parties' testimony and evidence of text messages between the parties, supports the court's finding that Mother attempted to limit Father's custody time, that she micromanaged Father's custody time,

and that she excluded Father from medical appointments. *See* Trial Court Opinion, 12/10/20, at 2.

Further, it was within the court's discretion to weigh Mother's negative factors and Father's positive factors as it saw fit in determining what type of order would meet Child's best interests. The record supports the court's analysis and its order. The court acknowledged this was a significant change for all involved, but stated it focused on "the totality of the circumstances" and the "effects on Child in considering the sixteen factors and Child's best interest." Rule 1925(a) Opinion, *supra* at 5.

Mother's claims on appeal collectively challenge the trial court's findings of fact and determinations regarding the credibility of witnesses and weight of the evidence presented at trial. Mother essentially questions the court's conclusions and assessments and asks this Court to reweigh the evidence and reach an alternative conclusion. This we cannot do. It is well settled that this court cannot reverse a trial court's decision merely because the record *could* support a different result. *See In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003). When we review a custody order, "the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *P.J.P. v. M.M.*, 185 A.3d 413, 417 (Pa. Super. 2018).

Our thorough review of the record in this case demonstrates that competent record evidence supports the trial court's factual findings, and its modified custody order is reasonable in light of those findings. We find no abuse of discretion. *C.R.F., III*, *supra*; *M.A.T.*, *supra*. *See also R.M.G.*,

*supra* at 1237 ("Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/28/2021